STATE OF NORTH CAROLINA v. JOHN EDGAR RANKIN

No. 58

(Filed 1 December 1981)

**1. Criminal Law § 87.1— allowance of leading questions—no abuse of discretion**

The trial court did not abuse its discretion in permitting the prosecutor to ask an officer leading questions pertaining to the license number of the car operated by defendant on the night of a burglary and robbery.

**2. Criminal Law §§ 34.4, 46.1— evidence of another crime—competency to show flight and connection with weapon**

In this prosecution for first degree burglary and armed robbery, an officer's testimony that, two days following the crimes charged, he began looking for defendant after talking with persons at the scene of a shooting, shortly thereafter the officer saw defendant sitting with a woman on the porch of a nearby house, the officer called defendant's name and defendant and the woman ran between two houses, and the officer pursued defendant but gave up the chase when he encountered an altercation with the woman *is held* competent to show flight and to place defendant in close proximity to a gun which police found between two houses and which was used in the crimes charged, notwithstanding the testimony may also have tended to show defendant's involvement in a separate and distinct crime.

APPEAL by defendant from *Rousseau, J.,* 19 January 1981 Criminal Session of Greensboro Division of GUILFORD Superior Court.

Upon pleas of not guilty, defendant was tried on bills of indictment charging him with (1) first-degree burglary of the dwelling house of Janice Marie Ross, and (2) armed robbery of Ms. Ross.

Evidence presented by the state is summarized in pertinent part as follows:

On the night of 14-15 May 1980 Ms. Ross and her two young daughters were residing in and occupying an apartment at 924-B Omaha Street in the City of Greensboro. Ms. Ross retired around 10:00 p.m. but woke up around midnight and turned her television off. She went back to sleep and was awakened around 2:00 a.m. by a noise at the door leading to the outside. Two men then entered the room occupied by Ms. Ross and she turned on a light at the top of her bed. Immediately thereafter one of the men turned the light off but not before Ms. Ross recognized defendant as one of

the intruders. Defendant was wearing a ski mask and had a pistol in his hand. Ms. Ross had known defendant, who lived in a nearby apartment, for several months. She did not recognize the other intruder.

The burglars demanded money but Ms. Ross insisted she had none. They then searched portions of the apartment and left. As they reached the door, one of them fired a gun.

Police were called and went immediately to Ms. Ross' apartment. At the door leading to the apartment, they found a tire tool and damage to the door indicating that it had been pried open. They also dug a .32 caliber pistol bullet from the wall near the door. Ms. Ross gave them a list of items that she had determined were missing from her home.

During the early morning hours of 15 May 1980, Charles Barnard was sitting in an automobile parked on a street near the Ross apartment. He saw a blue Buick LeSabre with a white top occupied by two men drive up and park nearby. The men left the car and a few minutes later Barnard heard a shot. Thereafter, the two men returned to the car and sped away. Sometime later the police stopped a blue and white Buick owned and operated by defendant and also occupied by Alonzo Elliott. While police were talking to Elliott, defendant walked away. The officers saw part of a ski mask protruding from under the car seat. They removed the mask and found that it was wrapped around a watch. Ms. Ross identified the watch as being hers and identified the mask as being the one, or similar to the one, worn by defendant at the time of the burglary.

On the evening of 16 May 1980 police responded to a call to go to 709 Dale Street in Greensboro. Upon their arrival there, they found that one Ralph Rankin had been shot. The officers then intensified their search for defendant. A little later, they saw defendant sitting with a woman on the porch of a house on Ross Street. When the police called defendant, he and the woman left the porch and ran through the space between two houses. One of the officers found a .32 Smith & Wesson pistol under an oil drum between the houses. Expert testimony tended to show that the bullet removed from the Ross apartment could have been fired from the recovered pistol.

Defendant offered no evidence.

The jury found defendant guilty as charged. From judgments imposing a life sentence on the burglary count and a prison sentence of 50 years on the armed robbery count, defendant appealed. We allowed defendant's motion to bypass the Court of Appeals in the armed robbery case.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Daniel C. Oakley, for the state.*

*Donald L. Murphy for defendant-appellant.*

BRITT, Justice.

[1] Defendant contends first that the trial court committed prejudicial error in overruling his objections to two questions asked a witness by the prosecuting attorney. This contention has no merit.

Police Officer A. R. Wood testified with respect to the blue and white Buick allegedly owned and operated by defendant on the night in question. After stating that he observed said automobile on that night, the officer was asked:

"And did you note the license plate at that time, Officer Wood?"

Defendant's objection was overruled and the witness gave an affirmative answer. The witness was then asked:

"Would you please look to see if you can find the license number of the vehicle you saw on that date and time and at that location?"

Defendant's objection was overruled and the witness stated that the license number was TEC-598.

Defendant argues that the questions were leading and, therefore, were prejudicial to him. We disagree. It is doubtful that the second question can be classified as "leading". Even so, in the context of this case, we find neither question improper.

In *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974), Justice (now Chief Justice) Branch, speaking for this court, said:

"The trial judge in ruling on leading questions is aided by certain guidelines which have evolved over the years to the effect that counsel should be allowed to lead his witness on direct examination when . . . (7) the examiner directs attention to the subject matter at hand without suggesting answers and (8) the mode of questioning is best calculated to elicit the truth. (Citations.)"

285 N.C. at 492-93.

Furthermore, it is firmly entrenched in the law of this state that it is within the sound discretion of the trial judge to determine whether counsel shall be permitted to ask leading questions, and in the absence of abuse the exercise of such discretion will not be disturbed on appeal. *State v. Greene, supra; State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972); *State v. Clanton,* 278 N.C. 502, 180 S.E. 2d 5 (1971). We perceive no abuse of discretion here.

[2] Defendant's other contention is that the trial court committed prejudicial error in admitting evidence that was irrelevant. There is no merit to this contention.

Defendant argues that the court improperly permitted Officer Hugh Armstrong to testify that on 16 May 1980 he answered a call to 709 Dale Street; that when he arrived there he found Ralph Rankin, who had been shot, lying on the porch; that following conversations with several people at the scene, he began looking for defendant; that shortly thereafter he saw defendant sitting with a woman on the porch of a house nearby; that he called out to defendant by name; that defendant and the woman left the porch and ran through the open space between two houses; and that the officer pursued defendant but gave up the chase when he encountered an altercation with the woman.

It is well-settled that evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case being tried. 1 Stansbury's North Carolina Evidence (Brandis Rev.) § 77; *State v. Banks,* 295 N.C. 399, 245 S.E. 2d 743 (1978); *State v. Swift,* 290 N.C. 383, 226 S.E. 2d 652 (1976).

In the first place, most of the challenged testimony was relevant to show flight by defendant. The flight of an accused person is admissible as some evidence of guilt. 2 Stansbury's North

Carolina Evidence (Brandis Rev.) § 178; *State v. Jones*, 292 N.C. 513, 234 S.E. 2d 555 (1977); *State v. Lampkins*, 283 N.C. 520, 196 S.E. 2d 697 (1973). The evidence showed that defendant had "walked away" from the police and left his car with them early in the morning of 15 May 1980. Considering what Ms. Ross and other witnesses had told them, and what they had found in the car, it is reasonable to assume that the officers were looking for defendant on the evening of 16 May 1980.

In the second place, at least part of the challenged testimony was relevant to place defendant in close proximity to the site where police found the pistol that could have fired the bullet into the wall of the Ross apartment.

Implicit in defendant's argument is the suggestion that the challenged evidence tended to show defendant's involvement in a separate and distinct offense. While a strained interpretation of the record might support this suggestion, the more reasonable interpretation is that while the police were responding to a call relating to the shooting of Ralph Rankin, they learned that defendant was in the area and they began looking for him in connection with the burglary and armed robbery charges. In any event, due to the overwhelming evidence against defendant in the cases now under review, we conclude that he was not prejudiced by any reference to the shooting of Ralph Rankin. "The burden is on defendant not only to show error but also to show that the error complained of affected the result adversely to him . . . ." 4 Strong's N.C. Index 3d, Criminal Law, § 167.

We conclude that defendant received a fair trial, free from prejudicial error.

No error.