STATE OF NORTH CAROLINA v. CARLTON FANANDZA CORBETT

STATE OF NORTH CAROLINA v. CARL LAWRENCE RHONE

No. 167A81

(Filed 7 December 1982)

1. Rape and Allied Offenses § 3— indictment for first degree rape—failure to allege "with force and arms"

An indictment for first degree rape was not fatally defective for failure to contain the averment "with force and arms," since G.S. 15-144.1(a) neither required such an averment nor expressed a legislative intent that the language in the statute should prevail over the express language in G.S. 15-155 stating that no judgment shall be stayed or reversed because of the omission of the words "with force and arms" from the indictment.

2. Constitutional Law § 31— indigent defendant—denial of funds for fingerprint expert

The trial court did not abuse its discretion in the denial of an indigent defendant's motion for funds with which to retain an expert in fingerprint analysis. G.S. 7A-454.

3. Constitutional Law § 30; Bills of Discovery § 6— pretrial discovery—statements and names of witnesses

Defendant was not entitled under G.S. 15A-904(a) to the pretrial discovery of (1) written statements of witnesses, (2) the names and addresses of all witnesses to be called by the State, and (3) copies of statements made to any law enforcement officer or staff connected with defendant's case.

State v. Corbett and State v. Rhone

4. **Criminal Law § 15.1— denial of change of venue for publicity and local prejudice**

In this prosecution for armed robbery, kidnapping and rape, evidence that four newspaper articles traced the investigation and reported on the apprehension of the defendants did not show "great prejudice" sufficient to preclude a "fair and impartial trial" in the county so as to require a change of venue pursuant to defendant's motion under G.S. 15A-957. Furthermore, testimony that the victim came from a large, respected family in the county and that people of the community were concerned and upset over the crimes did not show "local prejudice" sufficient to invoke the protection of G.S. 15A-957.

5. **Criminal Law § 92.1— consolidation of charges against two defendants**

Charges against two defendants for armed robbery, kidnapping and rape were properly consolidated for trial. G.S. 15A-926(b)(2).

6. **Criminal Law § 99.9— examination of witnesses by court—no expression of opinion**

The trial court's questions to witnesses were intended to clarify their testimony and did not constitute an expression of opinion in violation of G.S. 15A-1222.

7. **Criminal Law § 66.12— in-court identification—independent origin from viewing at preliminary hearing**

The evidence supported the trial court's determination that the victim's identification of defendants was of independent origin based upon her viewing of them at the time of the crimes and did not result from her viewing of them at the preliminary hearing.

8. **Rape and Allied Offenses § 4— testimony using the word "rape"—waiver of objection**

The benefit of defendant's objection to a question to a physician concerning his examination of "rape" victims was lost where the witness had earlier testified concerning "rape" cases without objection.

9. **Rape and Allied Offenses § 4— testimony about "rape examination"**

The trial court did not err in permitting a physician to testify that he had performed a "rape examination" on the prosecutrix since (1) defendant waived his objection to such testimony when he failed to object to other testimony by the witness that he was trained in "rape cases," that this was a "rape investigation," and that he used a "rape kit," and (2) the word "rape" merely described, as a shorthand statement of fact, the nature or purpose of the procedure and did not constitute an invasion of the province of the jury or an inflammatory conclusion.

10. **Criminal Law § 89.5— corroborating testimony—slight variances**

Slight variances between the in-court testimony of the prosecutrix and corroborating statements testified to by a detective did not render the corroborating statements inadmissible.

**11. Criminal Law § 60.3— fingerprint testimony—implicit finding that witnesses were experts**

By admitting fingerprint testimony by three officers, the trial court presumably found the officers to be expert witnesses where each officer was questioned concerning his background, training and experience before so testifying, and there was ample evidence in the record to support such a finding.

**12. Criminal Law § 87.1— leading questions—no abuse of discretion**

The trial court did not abuse its discretion in permitting the State to ask leading questions of a witness concerning the chain of custody of items from which latent fingerprints were lifted.

**13. Criminal Law § 168.1— correction of error in instructions**

Error in the trial court's summary of the evidence that defendant, rather than his codefendant, was in possession of the victim's watch when he was apprehended was cured by the court's subsequent correction thereof.

**14. Kidnapping § 1.2; Rape and Allied Offenses § 5; Robbery § 4.3— kidnapping, first degree rape and armed robbery—sufficiency of evidence**

The State's evidence was sufficient to support conviction of two defendants for the kidnapping, armed robbery and first degree rape of a victim whom defendants accosted in a grocery store parking lot. G.S. 15A-1227(a).

APPEAL by defendants from judgments of *Long, J.,* entered at the 23 July 1981 Criminal Session of Superior Court, BLADEN County. Defendants were indicted for armed robbery, kidnapping, and first degree rape. The cases were consolidated for trial and defendants were found guilty on all charges. Each defendant received two sentences of life imprisonment, to run consecutively, upon his convictions of kidnapping and rape, and a seven year sentence upon his conviction of armed robbery. We allowed defendants' motions to bypass the Court of Appeals on the armed robbery convictions.

The State's evidence tended to show that on 23 January 1981, at approximately 7:30 p.m., Donna Gooden Rice was accosted by two young black males as she attempted to get out of her car in the parking lot of Hill's grocery store in Elizabethtown. Ms. Rice testified that one of the men, whom she identified as defendant Rhone, ordered her at gunpoint to open the driver's door and move over to the passenger's side. A second man, identified as defendant Corbett, got into the back seat. Rhone drove the 1981 gray Mustang out of the parking lot "to a place called the Shaw Farm," where "he parked the car toward a hedgerow in a field." During the journey Ms. Rice had offered the two men all

the money that she had if they would let her go. She gave defendant Rhone $26.00.

Ms. Rice further testified that once Rhone had parked the car, he ordered her to remove her clothes and move to the back seat. Rhone followed her to the back while Corbett moved to the front seat. Rhone positioned himself on top of the victim and holding a gun to her side forced her to assist him achieve penetration. After three or four minutes, Corbett announced that another car was approaching. Rhone sat up and when the car was safely out of sight, he returned to the front seat and drove the car further into the woods. Corbett then had sexual intercourse with Ms. Rice, followed again by Rhone. Ms. Rice was told to dress and remain in the back seat. Rhone drove the car to the Scotchman store in Dublin where he planned to cash a $100.00 check written by Ms. Rice. Meanwhile, Corbett told Ms. Rice to remove all her jewelry. She surrendered a wedding band, a diamond ring, a high school class ring and a Timex watch. After arriving at the Scotchman, Rhone decided "it was too risky to go in." According to Ms. Rice, Rhone "wasn't very good at driving a straight-drive" car and as they left the Scotchman, her car stalled two or three times. This occurred at approximately 10:00 p.m.

Rhone drove back to Elizabethtown. Ms. Rice was informed that she "was lucky this time; that they were going to let [her] go." The defendants tried to wipe off the inside of the car with Ms. Rice's coat and then shut the car doors and ran. Ms. Rice drove immediately to her mother-in-law's, then to the sheriff's department, and then to the hospital. After undergoing a medical examination at the hospital, she returned to the sheriff's department where she gave a statement.

Other testimony tending to corroborate the victim's version of the events included the following:

Phillip Little, a detective with the Bladen County Sheriff's Department, testified concerning Ms. Rice's statement to him, which statement essentially paralleled her testimony at trial. He also testified that when Corbett was arrested on 2 February 1981, a Timex watch identified as that belonging to Ms. Rice was found in his pocket.

Joe Horace Nance testified that on 31 January 1981, defendant Corbett came into the Trade Center where Nance worked and

sold him a diamond ring and a wedding band. Corbett wrote Nance a receipt for $30.00 bearing the following: "Johnny Corbett, Route 3, Box 138, Elizabethtown, 862-4625." Nance handed the rings over to Detective Little and they were identified at trial as belonging to Ms. Rice.

Lisa Faye Kinlaw testified that on 23 January 1981 she was waiting in her car across the street from the Dublin Scotchman at approximately 10:00 p.m. She noticed a gray Mustang with two black males in it parked in front of the Scotchman. The men "made two attempts to try and get onto the highway . . . " but the "car jerked and cut off."

Dr. Don Creed testified that tests performed on Ms. Rice after the alleged rape were positive for the presence of seminal fluid. His examination revealed multiple small abrasions and lacerations and a small amount of hemorrhage in the vaginal area.

SBI Agent Stephen R. Jones testified that fingerprints found inside Ms. Rice's car, and on an envelope and Exxon gasoline receipts found in the car, corresponded to the fingerprints of both defendants.

*Rufus L. Edmisten, Attorney General, by Thomas H. Davis, Jr., Assistant Attorney General and Charles M. Hensey, Assistant Attorney General, for the State.*

*James E. Hill, Jr., Attorney for appellant-defendant Rhone; David Garrett Wall, Attorney for defendant-appellant Corbett.*

MEYER, Justice.

We will discuss each defendant's assignments of error separately.

## Defendant Rhone

[1] This defendant first contends that the indictment charging him with first degree rape was fatally defective for failure to allege the averment "with force and arms" which, he maintains, is required under G.S. § 15-144.1 (Cum. Supp. 1981). He further contends that "since the indictment was fatally defective, the charge to the jury and the entry of verdicts and judgment against [him] which were based on the indictment are equally defective and must be reversed." We do not agree.

In support of his contention that the indictment charging him with first degree rape was fatally defective defendant relies on the following language which appears in G.S. § 15-144.1(a):

(a) In indictments for rape it is not necessary to allege every matter required to be proved on the trial; but in the body of the indictment, after naming the person accused, the date of the offense, the county in which the offense of rape was allegedly committed, *and the averment 'with force and arms,' as is now usual,* it is sufficient in describing rape to allege that the accused person unlawfully, willfully, and feloniously did ravish and carnally know the victim, naming her, by force and against her will and concluding as is now required by law. Any bill of indictment containing the averments and allegations herein named shall be good and sufficient in law as an indictment for rape in the first degree and will support a verdict of guilty of rape in the first degree, rape in the second degree, attempted rape or assault on a female.

(Emphasis added.)

By contrast, the bill of indictment charging defendant with first degree rape reads as follows:

THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 23rd day of January, 1981, in Bladen County Carl Lawrence Rhone unlawfully and wilfully did feloniously ravish and carnally know Donna Gooden Rice, by force and against the victim's will, against the form of the statute in such case made and provided and against the peace and dignity of the State.

Also of some significance to our decision on this issue is the following language appearing in G.S. § 15-155:

No judgment upon any indictment for felony or misdemeanor, whether after verdict, or by confession, or otherwise, shall be stayed or reversed for . . . omission of the words . . . 'with force and arms,' . . . .

Defendant was charged with first degree rape pursuant to G.S. § 14-27.2(a)(2)(a): "A person is guilty of rape in the first degree if the person engages in vaginal intercourse . . . [w]ith

another person by force and against the will of the other person, and [e]mploys or displays a dangerous or deadly weapon . . . . " Defendant does not attempt to argue, nor would we agree, that the averment "with force and arms" is necessary to establish the "dangerous or deadly weapon" element of the offense. We have previously held that in enacting G.S. § 15-144.1(a), the General Assembly has provided for a "shortened form" of the rape indictment which explicitly eliminates the requirement that the indictment contain allegations of every element of the offense. *State v. Perry*, 298 N.C. 502, 259 S.E. 2d 496 (1979); *State v. Lowe*, 295 N.C. 596, 247 S.E. 2d 878 (1978). Although proof of the "dangerous or deadly weapon" element of the offense was essential to a conviction of the defendant for first degree rape, G.S. § 15-144.1(a) "clearly authorizes an indictment for first-degree rape which omits averments (1) that the offense was perpetrated with a deadly weapon . . . . " *State v. Lowe*, 295 N.C. at 600, 247 S.E. 2d at 881. In *Lowe* this Court upheld the constitutionality of G.S. § 15-144.1.[1]

We therefore must determine whether the inclusion of the averment "with force and arms," though not necessary by virtue of G.S. § 15-155, is nevertheless mandated by G.S. § 15-144.1(a). We do not read this statute as either *requiring* the averment or as expressing a legislative intent that the language in G.S. § 15-144.1(a) prevail over the express language in G.S. § 15-155 which states in effect that no judgment shall be stayed or reversed because of the omission of the words "with force and arms" from the indictment. As the bill of indictment upon which defendant was charged comports with the requirements of G.S. § 15-144.1(a), this assignment of error is overruled.

[2] As his second assignment of error, defendant Rhone contends that the court erred by denying his motion for funds with which to retain an expert in fingerprint analysis "in view of the heavy reliance which the State placed on the testimony of Phillip

---

1. As we stated in *Lowe*, "[a]n indictment is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him for subsequent prosecution for the same offense." In the present case, each defendant, in a pretrial motion, stated specifically that he had been indicted for first degree rape, which charge potentially carried a sentence of life imprisonment. While not dispositive of the issue, defendant's acknowledgment of his awareness of the charges against him does little to bolster his position.

Little as an expert in fingerprint analysis." Defendant concedes that the decision to approve fees for the appointment of an expert under G.S. § 7A-454 rests within the sound discretion of the trial judge and will not be disturbed on appeal absent abuse of discretion. *State v. Parton*, 303 N.C. 55, 277 S.E. 2d 410 (1981); *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976).

As we stated in *State v. Gray*, 292 N.C. 270, 277, 233 S.E. 2d 905, 911 (1977), "the assistance of an expert or private investigator or both would be, generally, welcomed by all defendants and their counsel as an added convenience to the preparation of a defense . . . . We, must, however, also recognize that it is practically and financially impossible for the state to give indigents charged with crime every jot of advantage enjoyed by the more financially privileged." The Court further stated that the assistance contemplated by G.S. § 7A-454 will be provided "only upon a showing by defendant that there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense or that without such help it is probable that defendant will not receive a fair trial." *Id.* at 278, 233 S.E. 2d at 911. The record before us discloses that defendant's counsel conducted an intelligent and thorough cross-examination of Detective Little. Defendant makes no convincing argument that the retention of an expert would have materially assisted him in his preparation for trial. This assignment of error is overruled.

[3] Defendant's third assignment of error concerns the denial of portions of his motion for information necessary to receive a fair trial. Defendant concedes that the three paragraphs in question "would appear to seek information prohibited by G.S. 15A-904(a)." Inasmuch as defendant requested (1) written statements of witnesses, (2) the names and addresses of all witnesses to be called by the State, and (3) copies of statements made to any law enforcement officer or staff connected with defendant's case, we agree that the information sought was not subject to discovery, pursuant to G.S. § 15A-904(a). *State v. Abernathy*, 295 N.C. 147, 244 S.E. 2d 373 (1978); *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977). The trial court did not err in denying defendant's motion with respect to these requests.

[4] Defendant next contends that the trial court erred in denying his motion for a change of venue. In support of his position,

defendant includes in the record on appeal copies of four newspaper articles concerning the crimes with which he was charged. The articles, captioned as follows: "Search Underway for Two Rapists," "No Arrests Yet in Friday Rape Case," "Rape Suspect Charged," and "Second Rape Suspect Arrested," give a factual, straightforward account of the investigation. We do not view these articles as evidence of "considerable publicity and reaction to the crimes" as defendant asserts. Also included in the record is testimony that Ms. Rice came from a large, respected Bladen County family and that at the time of the crime, the people of the community, especially friends and neighbors, were concerned and upset over the event.

This Court has held that a motion for change of venue on the grounds of local prejudice or unfavorable publicity against the defendant is addressed to the sound discretion of the trial judge. The trial court's ruling will not be disturbed absent an abuse of discretion. *State v. Parton,* 303 N.C. 55, 277 S.E. 2d 410; *State v. See,* 301 N.C. 388, 271 S.E. 2d 282 (1980); *State v. Faircloth,* 297 N.C. 100, 253 S.E. 2d 890, *cert. denied,* 444 U.S. 874 (1979); *State v. Matthews,* 295 N.C. 265, 245 S.E. 2d 727 (1978), *cert. denied,* 439 U.S. 1128 (1979). The burden is on the defendant to show that "there exists in the county in which the prosecution is pending so great a prejudice . . . that he cannot obtain a fair and impartial trial." G.S. § 15A-957. *State v. See,* 301 N.C. 388, 271 S.E. 2d 282. From the information supplied to us in the record, we conclude that defendant has not met this burden. The mere fact that four newspaper articles traced the investigation and reported on the apprehension of the defendants is not tantamount to a showing of "great prejudice" sufficient to preclude "a fair and impartial trial." Nor does the fact that the prosecuting witness and her family enjoyed the respect of a community which was quite naturally concerned for Ms. Rice's well-being suggest "local prejudice" sufficient to invoke the protection of G.S. § 15A-957. The assignment of error is overruled.

[5]  By his fifth assignment of error, defendant contends that the trial court erred in allowing the State's motion to consolidate for trial his cases with those of his co-defendant Corbett. Defendant properly points out that the joinder of offenses and defendants is governed by G.S. § 15A-926, and that G.S. § 15A-926(b)(2) permits joinder of defendants who may have acted as part of a common

scheme or plan or are accused of offenses "[s]o closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others." Absent a showing of abuse of discretion, the trial judge's ruling on joinder will not be disturbed on appeal. *State v. Porter*, 303 N.C. 680, 281 S.E. 2d 377 (1981); *State v. Rinck*, 303 N.C. 551, 280 S.E. 2d 912 (1981). We hold that under the facts of this case, the trial judge properly consolidated the cases. *See State v. Braxton*, 294 N.C. 446, 242 S.E. 2d 769 (1978). Defendant concedes, and we agree, that the record does not disclose sufficient evidence to demonstrate either an abuse of discretion or deprivation of a fair trial upon joinder of the cases against these two defendants. The assignment of error is overruled.

[6] Defendant's sixth assignment of error includes numerous exceptions to what he styles as "serious and extensive intrusions" into the trial proceedings by the trial judge by way of questions to witnesses in violation of G.S. § 15A-1222. Our review of the pertinent portions of the record discloses that the trial judge's questions to the witnesses were intended to clarify the testimony and did not convey the court's opinion as to the credibility of the witnesses or defendant's guilt. Defendant has failed to show that any of the excepted to remarks were prejudicial. *State v. Rinck*, 303 N.C. 551, 280 S.E. 2d 912; *State v. Norwood*, 303 N.C. 473, 279 S.E. 2d 550 (1981).

[7] Ms. Rice's in-court identification of the defendant is the source of defendant's seventh assignment of error. He contends that because Ms. Rice saw him at a preliminary hearing, "there was substantial likelihood of irrevocable misidentification." This contention is totally without merit. The trial court conducted a voir dire hearing during which Ms. Rice testified that she had ample time and opportunity to view her assailants at the time of the kidnapping, rape and robbery; that although the defendants were present at the preliminary hearing, they were in the company of five or six other prisoners and were not singled out as being her assailants; and that her identification of the defendant was not based on what she saw at the preliminary hearing. The court concluded that Ms. Rice's identification of the defendant was based on her observation of him during the evening of 23 January 1981. On the authority of *State v. Dawson*, 302 N.C. 581, 276 S.E. 2d 348 (1981) and *State v. Tann*, 302 N.C. 89, 273 S.E. 2d 720 (1981),

we hold that Ms. Rice's in-court identification of the defendant was of independent origin and was properly admissible at trial.

[8] Defendant assigns as error the admission of certain testimony which he argues was irrelevant, immaterial and incompetent. Specifically he objects to the use of the word "rape" during direct examination of Dr. Creed. Dr. Creed had previously testified, without objection, that he had undergone training in "rape cases." When evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost. 1 Brandis on North Carolina Evidence § 30 (1982); *State v. Taylor*, 304 N.C. 249, 283 S.E. 2d 761 (1981); *State v. Searles*, 304 N.C. 149, 282 S.E. 2d 430 (1981); *State v. Satterfield*, 300 N.C. 621, 268 S.E. 2d 510 (1980); *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976). Thus the benefit of an objection to the subsequent question to Dr. Creed concerning his examination of "rape victims" was lost as a result of his earlier testimony concerning "rape cases" to which no objection was made. Nor do we find error in the admission of testimony, elicited on re-direct examination of Officer Jones, concerning the possibility of duplicate fingerprints. Defendant had raised this issue during cross-examination of the witness. Evidence explanatory of testimony brought out on cross-examination is admissible on re-direct. 1 Brandis § 36; *State v. McKeithan*, 293 N.C. 722, 239 S.E. 2d 254 (1977).

Defendant also includes under this assignment of error the admission of the following testimony, properly objected to as nonresponsive to the questions propounded. The first resulted from a question to Ms. Rice on direct examination:

Q. All right. Now, before you got on the Peanut Plant Road, did either Mr. Rhone or Mr. Corbett say anything to you?

A. I asked—started to ask—told them they could have all the money I had left and just to let me go; that I hadn't done anything to them.

The second incident occurred during the defendant's cross-examination of Detective Little concerning Ms. Rice's description of defendant Corbett:

Q. Mr. Little, you never found these items of clothing, did you?

A. No sir.

Q. The fact is, they are a very common and an ordinary type of clothing, aren't they?

A. Well, I guess you would say they were common and ordinary; but I have seen the defendant Corbett wearing—

Q. Well, I didn't ask you that, Mr. Little. I just asked you if they were a common and ordinary type of clothing.

At this point, the court permitted the witness to explain his answer:

A. I don't know how common that type of clothing would be; but I have seen the defendant Corbett wearing a tan colored or a light brown colored cap that fits that description.

Assuming arguendo that the admission of this testimony constituted error, defendant has made neither argument nor showing of actual prejudice, *i.e.*, that "had the error in question not been committed, a different result would have been reached at the trial . . . . " G.S. § 15A-1443(a). We find no error.

[9] By a separate assignment of error, defendant further contends that because the term "rape" is a legal rather than a medical term, the trial court erred when it permitted Dr. Creed to testify that he had performed a "rape examination" on Ms. Rice. Defendant's argument is two-fold: that the use of the term "rape" constituted an invasion of the province of the jury and that it constituted "an unwarranted and inflammatory conclusion." We reject defendant's arguments upon two separate grounds. First, as noted above, Dr. Creed had previously testified, without objection, that he was trained in "rape cases." After he testified that he conducted a "rape examination" on Ms. Rice, he then testified, again without objection, that "this was a rape investigation" and later he used the term "rape kit." Thus, defendant waived the benefit of the objection. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629. Moreover, nowhere in this testimony is there the suggestion that the defendant raped Ms. Rice. *State v. Galloway*, 304 N.C. 485, 284 S.E. 2d 509 (1981). The word "rape" is used as an adjective in each instance, merely *describing*, as a shorthand statement of fact, the nature or purpose of the procedure. *Id.* We find no error here.

Defendant objects to the introduction, as substantive evidence, of certain exhibits without proper foundation—specifically an automatic pistol taken from defendant and various sets of fingerprints. He is unable to point to any precise lapse in the chain of custody, nor has he argued that the evidence was immaterial or irrelevant. The assignment of error is without merit.

[10] Defendant next contends that the trial court erred in allowing Detective Little to testify concerning statements made to him by Ms. Rice, arguing that they were not corroborative of her earlier testimony. We find, upon examination of the record, that although there were slight variances between Ms. Rice's in-court testimony and the statements testified to by Detective Little, such variance does not render the statements inadmissible. *See State v. Mayhand,* 298 N.C. 418, 259 S.E. 2d 231 (1979).

By his twelfth assignment of error defendant argues that the expert opinion testimony given by Dr. Creed, Officer Bunn, Detective Little, and Special Agent Jones was offered without proper foundation. There is no basis whatsoever for the objections taken to Dr. Creed's "expert opinion" testimony. The witness was questioned extensively concerning his background and qualifications. He was tendered as an expert and found by the court to be a "Medical expert." Moreover, defendant's exceptions to Dr. Creed's testimony include only the following:

Q. And completed medical school at the University of South Carolina?

A. The Medical University, in Charleston.

And later, in response to a question concerning the results of an oxidation test to determine the presence of seminal fluid, Dr. Creed was permitted to answer, over objection, as follows:

A. There was a change in color from white to greenish-blue.

[11] Officer Bunn, Detective Little and Special Agent Jones testified that latent prints were lifted from Ms. Rice's vehicle and from items found in the car; that fingerprint impressions were taken from both defendant Rhone and defendant Corbett; and that the defendants' fingerprints matched those taken from the crime scene. In each case, the witness was questioned concerning

his background, training and experience before so testifying. By admitting the testimony of these witnesses, the court presumably found them to be experts. There is ample evidence in the record to support such a finding. *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied* 448 U.S. 907, *reh. denied* 448 U.S. 918 (1980); *State v. Cates,* 293 N.C. 462, 238 S.E. 2d 465 (1977); *State v. Jenerett,* 281 N.C. 81, 187 S.E. 2d 735 (1972). We find no error.

**[12]**  We find no merit in defendant's next contention that the court erred in allowing the State to ask leading questions of witness Steve Bunn concerning the chain of custody of items from which latent fingerprints were lifted. It is established law in this State that the decision to permit counsel to ask leading questions is within the sound discretion of the trial judge and absent abuse of such discretion, the decision will not be disturbed on appeal. *State v. Rankin,* 304 N.C. 577, 284 S.E. 2d 319 (1981). Much of the information contained in the questions was repetitive of earlier testimony and introductory in nature. *See State v. Williams,* 304 N.C. 394, 284 S.E. 2d 437 (1981), *cert. denied* --- U.S. --- (1982). The assignment of error is overruled.

**[13]**  In summarizing the evidence for the jury, the trial judge erroneously stated that the defendant Rhone, rather than defendant Corbett, was in possession of Ms. Rice's watch when he was apprehended. The error was brought to the attention of the court and corrected. Defendant concedes that the subsequent correction "likely" cured the error. We agree. *State v. Orr,* 260 N.C. 177, 132 S.E. 2d 334 (1963).

**[14]**  Finally, defendant contends that the trial court erred in denying his motions to dismiss pursuant to G.S. § 15A-1227(a).

> In ruling upon defendants' motion to dismiss on the grounds of insufficient evidence, the trial court is required to interpret the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. *State v. Fletcher,* 301 N.C. 709, 272 S.E. 2d 859 (1981); *State v. King,* 299 N.C. 707, 264 S.E. 2d 40 (1980); *State v. Bowman,* 232 N.C. 374, 61 S.E. 2d 107 (1950). The trial court must determine as a question of law whether the State has offered substantial evidence of defendant's guilt on every essential element of the crime charged. 'Substantial evidence' is that amount of relevant evidence that a reasonable mind might ac-

cept as adequate to support a conclusion. *State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164 (1980); *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980).

*State v. Cox*, 303 N.C. 75, 87, 277 S.E. 2d 376, 384 (1981). Upon a complete review of the evidence in the record before us, we find that the State offered substantial evidence on each and every element of the offenses with which defendant was charged.

### Defendant Corbett

Defendant Corbett assigns the following errors as the basis for his appeal:

1. Insufficiency of the indictment charging him with rape in failing to include the averment "with force and arms."

2. Denial of his motion for funds to employ an expert in fingerprint analysis.

3. Denial of his motion for a change in venue.

4. Granting of the State's motion for consolidation of the cases against both defendants.

5. The trial court's questioning of witnesses in violation of G.S. § 15A-1232.

6. The in-court identification made of defendant Corbett by the prosecuting witness.

7. The admission into evidence of certain exhibits including an automatic pistol, sets of fingerprints, and a gold wedding band.

8. Denial of his motions to dismiss.

As this defendant's eight assignments of error duplicate in all material respects those brought forward by defendant Rhone, and as we have fully discussed each of these alleged errors with respect to defendant Rhone's appeal, we therefore deem it unnecessary to repeat the portions of our opinion applicable to these issues.

For the reasons set forth in this opinion, we hold that defendants Rhone and Corbett received a fair trial free of prejudicial error.

No error.