STATE OF NORTH CAROLINA v. WINFRED ED BRIDGES

No. 96A88

(Filed 9 November 1989)

**Constitutional Law § 31 (NCI3d) — indigent defendant — funds for fingerprint expert**

The trial court erred in denying an indigent defendant's pretrial motion for funds to hire an independent fingerprint expert in a first degree murder case where defendant made a threshold showing of specific need for such expertise and demonstrated that such testimony would be of material assistance in preparing his defense by showing that fingerprint evidence was the only direct evidence linking defendant to the offense; the experts who testified as to the preparation and identification of the latent prints found at the crime scene were witnesses for the State, not independent parties; and, without the assistance of a fingerprint expert, defendant would be unable to assess adequately the conclusion of the State's

STATE v. BRIDGES

[325 N.C. 529 (1989)]

experts that the latent prints from the crime scene correlated to his own fingerprints.

**Am Jur 2d, Criminal Law § 1006.**

Justice MITCHELL dissenting.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment sentencing him to death, entered by *Hight, J.*, at the 19 January 1988 Criminal Session of Superior Court, GRANVILLE County, upon defendant's conviction of murder in the first degree in the perpetration of a felony. Heard in the Supreme Court 12 October 1989.

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant, Assistant Attorney General, for the State.*

*Floyd B. McKissick, Sr., and Stephen D. Kaylor for defendant-appellant.*

WHICHARD, Justice.

Defendant was convicted of robbery with a firearm and of murder in the first degree in the perpetration of a felony. He was sentenced to death for the murder conviction. We conclude that the trial court erred in denying defendant's pretrial motion for funds to hire an independent fingerprint expert. For this reason, we order a new trial.

At approximately 2:00 p.m. on 17 May 1987, a customer entered the Lake Side Grocery on Highway 15 in Granville County and discovered the body of its proprietor lying on the floor behind the counter. A forensic pathologist later determined that the victim had died from small-caliber gunshot wounds to the head and chest. The cash register was open and the floor was littered with debris, including a wallet belonging to the victim and what appeared to be its scattered contents. An unplugged wall clock was stopped at approximately 1:43 p.m. An electrically operated alarm system, which evidently had been pulled off the wall near the clock, was found in a sink in an adjacent room. A sign on the entry door was hung so as to indicate the store was "Closed."

Evidence that the victim had been robbed consisted of the testimony of the victim's grandson that his grandfather customarily kept large amounts of cash in his billfold, rather than in the cash

register, and the testimony of a customer who had purchased a box of salt with a twenty-dollar bill around 1:30 p.m. that day. Neither the cash register nor the billfold found on the floor of the grocery contained a twenty-dollar bill or any other cash.

The bulk of the evidence linking defendant to the murder was circumstantial. An acquaintance testified that on 17 May, on her way to visit a resident of the trailer park across the highway from the store, she had seen defendant walking down the highway toward the store between 1:15 and 1:30 p.m. She saw defendant again, still in the general vicinity of the store, after she left the park fifteen or twenty minutes later. Defendant later introduced contradictory alibi testimony of his uncle and cousin.

The only direct evidence of defendant's involvement in the victim's death was three thumbprints which the State's expert witnesses identified at trial as defendant's. One print was lifted from the "Open/Closed" sign on the entry door; the other two were lifted from the back of a medical insurance card found lying near the victim's wallet. Prior to trial defendant had filed two motions regarding any fingerprint impressions taken from the crime scene. The first, based on N.C.G.S. § 15A-903(e) (1988), requested scientific examination of the prints by defendant's own expert; the second, under N.C.G.S. § 7A-454 (1986), requested funds to hire an expert for such an examination. At a pretrial hearing Judge James R. Strickland expressly denied the second motion and in effect denied the first. The motions were reiterated midtrial, albeit somewhat obliquely, along with a motion to suppress the fingerprint evidence, and again were overruled. We hold that under the particular facts of this case it was error to refuse funds for the expert examination of this evidence.

In *Ake v. Oklahoma*, 470 U.S. 68, 84 L. Ed. 2d 53 (1985), the United States Supreme Court held that a defendant is constitutionally entitled to the assistance of a court-appointed psychiatrist in the preparation of a defense when he has made "a preliminary showing that his sanity at the time of the offense is likely to be a significant factor" in his defense. *Id.* at 74, 84 L. Ed. 2d at 60. In *State v. Johnson*, 317 N.C. 193, 199, 344 S.E.2d 775, 779 (1986), this Court considered synonymous "a showing" that the issue is "a significant factor," and "a threshold showing of specific necessity" or of "particularized need," the last of which has figured frequently in the jurisprudence of this State as a measure

of the appropriateness of providing the assistance of an expert. *See, e.g., State v. Artis,* 316 N.C. 507, 512-13, 342 S.E.2d 847, 850-51 (1986).

This Court's post-*Ake* cases have held further that, in addition to making such a threshold showing, the defendant must demonstrate either that without expert assistance he will be deprived of a fair trial, or that there is a reasonable likelihood that it will *materially* assist him in the preparation of his case. *E.g., State v. Penley,* 318 N.C. 30, 52, 347 S.E.2d 783, 796 (1986). This additional requisite accords with the United States Supreme Court's subsequent refinement of *Ake* that there is no deprivation of due process when the trial court exercises its discretion to find that defendant's showing consists of "little more than undeveloped assertions that the requested assistance would be beneficial." *Caldwell v. Mississippi,* 472 U.S. 320, 323-24 n.1, 86 L. Ed. 2d 231, 236 n.1 (1985). *See Artis,* 316 N.C. at 512-13, 342 S.E.2d at 851.

In *State v. Moore,* 321 N.C. 327, 364 S.E.2d 648 (1988), this Court recognized that the showing demanded under *Ake* and its North Carolina progeny was "a flexible one[,] . . . designed to ensure that the indigent defendant 'has access to the raw materials integral to the building of an effective defense.'" *Id.* at 344, 364 S.E.2d at 657 (quoting *Ake,* 470 U.S. at 77, 84 L. Ed. 2d at 62). Accordingly, this Court examined that defendant's motion for funds for a fingerprint expert and identified three circumstances that together met the requisite threshold showing of specific necessity. First, "[d]efendant showed that absent a fingerprint expert he would be unable to assess adequately the State's expert's conclusion that defendant's palmprint was found at the scene of the attack." *Id.* Second, he "demonstrated that . . . this testimony by the State's expert was crucial to the State's ability to identify defendant as the perpetrator of the crimes charged against him." *Id.* Third, the defendant in *Moore* showed that his ability to communicate and reason was impaired by mental retardation, thus impeding his ability to assist his counsel in making a defense. *Id.* This last finding clearly satisfied the second-tier criterion of *Ake* and *Caldwell,* demonstrating that the expert assistance shown to be necessary by the first two circumstances would be of material value in preparing a defense.

The first two circumstances stated in *Moore* also underlie defendant's showing of specific necessity in this case. Additionally,

together they "demonstrate that defendant would have been 'materially assisted in the preparation of his defense' had the trial court granted his motion." *Moore*, 321 N.C. at 345, 364 S.E.2d at 657 (quoting *Penley*, 318 N.C. at 52, 347 S.E.2d at 796). First, the experts who testified as to the preparation and identification of the latent prints found at the crime scene were witnesses for the State, not independent parties. *See Moore*, 321 N.C. at 346, 364 S.E.2d at 657-58; *cf. Penley*, 318 N.C. at 52, 347 S.E.2d at 796 (funds requested for additional pathologist although pulmonary specialist testified for defense). Without his own expert to examine the items found at the crime scene and to compare any latent prints to his own impressions, defendant was unable to assess adequately the conclusion of the State's experts that the latent prints from the crime scene correlated to his own fingerprints. Second, fingerprint evidence was the only direct evidence linking defendant to the offense. This evidence was thus critical to the State's ability to identify defendant as the perpetrator of the crimes with which he was charged. The importance of this circumstance to a demonstration that an expert would have "materially assisted in . . . [a] defense" cannot be overstated: "[W]hen, because of lack of funds, a defendant is unable to rebut expert testimony with expert assistance of his own, the defendant's chances of persuading the jury to reject the expert's conclusions are 'devastated.'" *Moore*, 321 N.C. at 346 n.4, 364 S.E.2d at 658 n.4 (quoting *Ake*, 470 U.S. at 83, 84 L. Ed. 2d at 66).

While it is within the trial court's discretion to "approve a fee" for the appointment of an expert witness to testify for an indigent defendant, N.C.G.S. § 7A-454 (1986), it is error of constitutional magnitude to refuse such funds when the defendant has made a "threshold showing of specific need" and when expert assistance is of material importance to his defense or its absence would deprive him of a fair trial. These requisites are met when it is apparent that the fingerprint evidence is crucial to the State's proof that defendant is the perpetrator of the charged offense and when denial of a motion for funds precludes an indigent defendant from seeking the assistance of an independent expert in assessing that evidence.

Defendant made timely motions for the assistance of a fingerprint expert. For the reasons stated herein, we conclude that he made a threshold showing of specific need for such expertise and demonstrated that such testimony would be of material assistance

in preparing his defense. Because the trial court erred in denying those motions, and because we cannot say that error in precluding defendant from expert examination of critical inculpatory evidence was harmless beyond a reasonable doubt, N.C.G.S. § 15A-1443(b) (1988), defendant is entitled to a new trial. "[A] State may not legitimately assert an interest in maintenance of a strategic advantage over the defense, if the result of that advantage is to cast a pall on the accuracy of the verdict obtained." *Ake*, 470 U.S. at 79, 84 L. Ed. 2d at 63.

In view of this disposition and of the improbability that the numerous other errors assigned will recur upon retrial, we find it unnecessary to address defendant's remaining arguments.

New trial.

Justice MITCHELL dissenting.

The majority holds that the defendant demonstrated at trial that a fingerprint expert appointed at public expense would be of material assistance to him in preparing his defense, and that the trial court, therefore, erred in failing to appoint one. Although many types of experts will be of material assistance to an indigent defendant in preparing his case and should be appointed by the trial court in proper situations, I have previously explained to the best of my ability:

> The taking and analysis of fingerprints is largely a mechanical function, although admittedly one which requires some training and experience. Basically, the analysis of fingerprints involves comparing the latent print taken from the scene of the crime with a known print of the defendant to determine whether there are points of similarity. Once a given number of points of similarity are observed, the expert draws the conclusion that the two prints were made by the same person.

> It has been my experience that all of the steps involved in fingerprint analysis can be readily demonstrated to a jury in such a manner that the jurors are able to determine for themselves whether the points of similarity are in fact similar. Likewise, the jurors are as capable as the expert of counting the number of points of similarity. There simply is nothing so mysterious or difficult about fingerprint analysis and comparison as to prevent the ordinary lay juror from determining

whether the procedure has been performed correctly and the expert has reached the right conclusion, once the technique is explained and pointed out to the juror. For this reason, a defendant can properly defend himself against such evidence — if in fact he will ever be able to defend himself — by the simple expedient of thorough cross-examination of the State's fingerprint witness. *See State v. Corbett*, 307 N.C. 169, 297 S.E.2d 553.

*State v. Moore*, 321 N.C. 327, 348-49, 364 S.E.2d 648, 659 (1988) (Mitchell, J., concurring in result, joined by Meyer, J.).

The lesson for our trial judges from the majority's holdings in this case and the *Moore* case is that they must appoint fingerprint experts at public expense to assist indigent defendants in all cases in which the State relies upon fingerprint evidence and there were no eyewitnesses to the crime for which the defendant is charged. Perhaps this would be a desirable result in an ideal world. Given the limited financial resources available to our courts, however, the appointment of experts to aid criminal defendants in preparing a defense should be reserved for those cases in which it is reasonably likely to be necessary to ensure that the defendant receives a fair trial. In my view, this clearly is not such a case.

I dissent from the majority's holding that the trial court erred in failing to appoint a fingerprint expert and that the defendant must have a new trial as a result.