TYSON, Judge.
 

 *135
 
 Dustin Jamal Warren ("Defendant") appeals from a jury's verdict finding him guilty of possessing precursor chemicals with the intent to manufacture methamphetamine, manufacturing methamphetamine, and conspiracy to manufacture methamphetamine. We find no error in part, and dismiss Defendant's remaining arguments without prejudice to pursue them through a motion for appropriate relief.
 

 I. Background
 

 Shortly before 12:00 p.m. on 29 January 2014, Defendant drove his gold Buick to the Seashore Motel in Atlantic Beach, North Carolina.
 

 *136
 
 Accompanying Defendant was Heather Kennon ("Kennon"), an acquaintance Defendant knew through his brother.
 

 Defendant pulled up to the motel office, Kennon alighted the car, and went into the office to register for a room. Scott Way ("Way"), the manager of the Seashore Motel, watched as Kennon alighted from the front passenger seat. Kennon filled out a registration card and paid for a room for the night. On the registration card, Kennon listed her name and the license plate of Defendant's gold Buick. Way accepted the registration and payment and gave her a key to room 9. After checking in, Way testified Kennon and Defendant stayed in the car for a "little while," and then proceeded into the room.
 

 Approximately two hours after checking in, Kennon returned to the motel office and asked for an extra space heater. Snow was on the ground that day, and it was very cold outside. Carla Thomas ("Carla"), an assistant manager at the Seashore Motel, explained to Kennon the motel is old and another space heater would likely blow the circuit breaker.
 

 Way brought extra blankets to room 9 and offered them in lieu of a second space heater. Way testified a man opened the door roughly two or three inches and "announced that they were in, you know, in-not decent," and did not want the extra blankets. Way testified he heard a male voice, and did not observe any males enter or exit room 9 except for Defendant.
 

 The next morning, Way and Carla began the process of checking out guests and cleaning rooms previously rented. Around 9:00 or 9:30 a.m., Carla knocked on the door of room 9 to ascertain whether Kennon and Defendant needed anything or would like to register for another night.
 

 After no answer, Carla announced her identity and that she was about to enter the room. Carla unlocked the door and entered the room. She noticed a black bag which contained,
 
 inter alia,
 
 a mask and a glue gun. Carla also noticed a pickle jar turned upside-down with a dried white reside at the bottom. After viewing the contents of room 9, Carla informed Way of her findings. Together, they determined the police needed to be summoned. Way called 911.
 

 A. Kennon's Testimony
 

 Kennon testified that on 28 January 2014, she met Defendant at the DoubleTree Hotel in Atlantic Beach, North Carolina. Kennon and Defendant shared a room at the hotel, where they injected and inhaled methamphetamine, respectively. Defendant had already obtained the materials to make methamphetamine, with the exception of cold packs.
 

 *137
 
 Kennon and Defendant stopped by Cassie Flowers' ("Flowers") residence to obtain cold packs.
 

 On 29 January 2014, Kennon accompanied Defendant to the Seashore Motel. After registering and paying for the room, Defendant parked the gold Buick in front of room 9. Kennon testified Defendant brought a black suitcase into the room, which contained the precursors to, and various supplies necessary to manufacture, methamphetamine. Defendant began removing the precursors and supplies from the suitcase and arranging them in preparation to make methamphetamine.
 

 While Defendant prepared the supplies, Kennon injected herself with methamphetamine she had received from Defendant the previous day. Kennon attempted to assist Defendant in making methamphetamine. Defendant became dissatisfied with Kennon's assistance and manufactured the methamphetamine
 
 *838
 
 alone, as Kennon looked on. Kennon testified the manufacturing process yielded approximately 4.5 grams of methamphetamine.
 

 After Defendant finished, he left the supplies in room 9 at the Seashore Motel and they traveled to Anique Pittman's ("Pittman") residence. Pittman was Defendant's girlfriend. Kennon testified she, Defendant, Pittman, and Mark Thomas ("Thomas") drank beers, ingested methamphetamine, and spent the night. Kennon testified Defendant had the key to room 9 and intended to return to the Seashore Motel to retrieve the black suitcase and supplies prior to check out.
 

 The next morning, Defendant left Kennon at Pittman's house to retrieve the materials left in room 9. Kennon testified while Defendant was gone, Thomas texted Pittman's phone "saying the law got [Defendant]."
 

 B. Law Enforcement Investigation
 

 In the midmorning hours of 30 January 2014, Atlantic Beach Police Lieutenant Brian Prior ("Lieutenant Prior") received a call regarding a potentially hazardous chemicals and HAZMAT situation at the Seashore Motel. Upon arrival, Lieutenant Prior made contact with Carla, who told him about the items she had discovered inside room 9.
 

 Lieutenant Prior entered the room, and observed: (1) a 7-up two liter bottle with an unknown "red slushy residue" at the bottom; (2) plastic tubing; (3) a soda cap that had been "hollowed out" with a tube placed though the cap and secured with glue; (4) a funnel; (5) a face mask; (6) a glass jar with an unknown white powdery substance at the bottom; (7) Coleman fuel; (8) cardboard containers with salt in them; and (9) a used syringe located in the trashcan. Lieutenant Prior determined
 
 *138
 
 these items were consistent with items in a methamphetamine lab, based on his training and experience. Lieutenant Prior secured the room and obtained a search warrant. After the search warrant was issued, room 9 was processed by North Carolina State Bureau of Investigation ("SBI") agents.
 

 SBI Special Agent Kelly Ferrell ("Agent Farrell") was in charge of responding to clandestine laboratories found in the eastern portion of the state as a "Site Safety Officer." Agent Farrell was called to room 9 of the Seashore Motel to process a suspected methamphetamine laboratory on 30 January 2014. Agent Farrell documented the items located in room 9.
 

 Agent Farrell analyzed the red slushy residue found in the bottom of the 7-up bottle, which tested positive for hydrochloric acid, a precursor chemical for methamphetamine. Agent Farrell also observed a bottle of Floweasy drain cleaner, which contains sulfuric acid, and a Walgreens cold pack, which contains ammonium nitrate. Agent Farrell testified both sulfuric acid and ammonium nitrate are precursor chemicals for methamphetamine. Agent Farrell also observed various other trappings of a methamphetamine laboratory in room 9, including: (1) masks; (2) burnt aluminum foil; (3) a hot glue gun; (4) coffee filters; (5) green rubber gloves; (6) a bottle of hydrogen peroxide; and (7) a two pack of Energizer brand batteries of advanced lithium.
 

 Agent Farrell testified the materials found in room 9 were "typical of what [is] see[n]" at a methamphetamine lab using the "one-pot cook" method. Agent Farrell testified: (1) it took her "less than a minute" to determine the materials found in room 9 were a clandestine methamphetamine laboratory; and (2) the precursor chemicals found in room 9 were in fact used to produce methamphetamine.
 

 Atlantic Beach Police Officer David Ennis ("Officer Ennis") arrived at the Seashore Motel and assisted Lieutenant Prior. Officer Ennis briefly looked inside room 9 and sealed off the crime scene to ensure no one entered or exited except those authorized to do so. Officer Ennis reviewed the registration card Kennon had filled out at the time of check in. Officer Ennis ran the vehicle license plate number Kennon listed on the registration card, and found the plate was issued to a Buick vehicle registered to Defendant.
 

 While Officer Ennis remained on the scene, he noticed a gold Buick enter the Seashore Motel parking lot. Officer Ennis made contact with Defendant, the driver of the car, and asked him why he was at the motel. Defendant replied he was "just driving around."
 

 *839
 

 *139
 
 While talking to Defendant, Officer Ennis noticed two blue pills located in "the grip of the driver's side door" handle of Defendant's vehicle. Defendant admitted the pills were Adderall, a controlled substance. Officer Ennis instructed Defendant to exit his vehicle, handcuffed him, and placed him under arrest for possession of a controlled substance. Thomas was inside the car at the time of Defendant's arrest and was also arrested on unrelated charges.
 

 Officer Ennis performed a pat down of Defendant and a key fell "from the lower half of his body." Officer Ennis picked up and examined the key, issued to room 9 at the Seashore Motel. Defendant was transported to the Carteret County Detention Center for processing.
 

 C. Defendant's Indictment and Pre-Trial Motions
 

 Defendant was indicted with (1) possession and distribution of a methamphetamine precursor; (2) manufacturing methamphetamine; and (3) conspiracy to manufacture methamphetamine on 24 February 2014. Defendant retained counsel approximately twenty-seven days after his arrest. Defendant was represented by attorney Rodney Fulcher ("Fulcher"). At some point prior to 3 September 2014, Defendant, though counsel, made a motion to continue his case, which was granted.
 

 On 3 September 2014, Fulcher moved to withdraw as counsel. In support of his motion, Fulcher stated "[a]s we've kind of gone along with it, I don't think [Defendant] and I see eye-to-eye on everything. I don't think I can zealously represent him at a trial based on the evidence, the conversations we've had." Fulcher also mentioned Defendant was unable to "continue finish hiring" him.
 

 Defendant made a statement to the court at the motion hearing. Defendant stated Fulcher had not talked to "none of [his] witnesses" and had not obtained "none of the evidence." Defendant stated he felt as if he was "being railroaded," and "ask[ed] for [Fulcher] to withdraw from [the] case, and we just proceed toward trial." Defendant also stated he would need "enough time to prepare for trial, and a lawyer who's going to do the job I asked him to do." After hearing from Fulcher, Defendant, and the State, the trial court denied both the motion to withdraw and motion to continue.
 

 That same day, Defendant, through counsel, made an "Application and Writ of Habeas Corpus ad Testificandum" to secure the testimony of two defense witnesses, Flowers and Thomas, who were in prison in North Carolina. On 4 September 2014, Judge Benjamin Alford issued the
 
 *140
 
 writ and ordered the Carteret County Sheriff to serve the writ and make Flowers and Thomas available for testimony at trial.
 

 Defendant's case was called for trial on 8 September 2014. Defendant made another motion to continue. In support of his motion, Defendant stated defense witnesses were subpoenaed on 3 September 2014, and many of the subpoenas had not yet been served. Defendant argued Flowers and Thomas were material witnesses, and Defendant would be prejudiced if they were not available to testify. The State replied "the witnesses, some of them, are in custody, and we'll get them here." The trial court denied Defendant's motion to continue. Defendant then made a motion to suppress the evidence found in room 9 as illegally obtained. The trial court denied Defendant's motion to suppress.
 

 D. Defendant's Trial and Sentencing
 

 Defendant's case proceeded to trial on 8 September 2014. At the close of State's evidence, on 9 September 2014, Defendant moved to dismiss the three charges, which was denied. The court asked if Defendant would present any witnesses or evidence, and Defendant indicated he would. Regarding the testimony of Flowers and Thomas, Defendant's counsel stated "I do not know if Mark Thomas had been writted back or Cassie Flowers either. But I plan to call Lisa-Richard Willis, and Anique Pittman. All the other ones I am certain are here to testify."
 

 Defendant then called three witnesses on his behalf: Lisa Turner, Richard Willis, and Anique Pittman. Before the closing of Defendant's evidence, the following exchange occurred between the Court and Defendant's counsel:
 

 THE COURT: ... Anything from the defendant?
 

 *840
 
 [Defendant's Counsel]: Yes, Your Honor. We would bring a couple questions about witnesses.
 

 THE COURT: Yes, sir.
 

 [Defendant's Counsel]: Your Honor, if I may approach on one witness?
 

 THE COURT: Yes.
 

 (Discussion off the record at the bench.)
 

 THE COURT: All right. Mr. Fulcher, you have some motion you want-
 
 *141
 
 [Defendant's Counsel]: I do, Your Honor. We would-I would like to call one witness, a Brandon Elps, for the purposes of testifying to the truth of Ms. Kennon. He's over in custody in our jail. It would be limited to the fact-of testimony, that she had, in previous occasions, gotten him in trouble, went to the law on him and all that. So that would be my motion, to have him over here.
 

 And the other two witnesses would be-and the other two would be for Cassie Flowers in the Department of Corrections, and Mark Thomas. They, too, would be witnesses to show-testify to the untruthfulness of Ms. Kennon and things that she had said and done in the past.
 

 And I would make a motion to continue, to get those witnesses here.
 

 ...
 

 THE COURT: It would appear to the Court that any writ ... that was issued by this Court was done last Thursday, September the 4th, and the trial was scheduled-was due to start the 8th, and the person, Ms. Flowers, is not currently in the Carteret County jail and neither is Mark Thomas, is my understanding.
 

 As to the other one, testifying about some alleged bad act of Heather Kennon at some earlier time without any connection to this case, would-this Court does not believe would have relevance to the charges for which the defendant stands trial in this case, and would not grant a continuance for that.
 

 If you want to make an offer of proof as to that-who is it that's in the Carteret County jail?
 

 [Defendant's Counsel]: Brandon Elps. But I don't think I can do anything other than specific instances-
 

 THE COURT: I understand. If you want to make an offer of proof as to that, I'll be happy to have the Sheriff bring him over.
 

 Following this exchange, Defendant testified on his own behalf. No other evidence or testimony or offer of proof was presented by Defendant. The jury returned verdicts finding Defendant guilty of each of the three charges.
 

 *142
 
 During sentencing, the trial court determined Defendant had 15 prior record level points, and had attained a prior record level 5 for sentencing purposes. The court then consolidated file number 14 CRS 050372, possession and distribution of a methamphetamine precursor, with file number 14 CRS 050376, manufacture of methamphetamine, for judgment. The trial court determined the charges were Class F and Class C felonies, respectively, and sentenced Defendant to an active minimum term of 127 months and a maximum of 165 months in prison on the consolidated judgment.
 

 In file number 14 CRS 050377, conspiracy to manufacture methamphetamine, the trial court determined the offense was a Class C felony, and sentenced Defendant to an active minimum term of 127 months and a maximum of 165 months to run consecutively at the expiration of his sentence in the first judgment.
 

 Defendant gave notice of appeal in open court.
 

 II. Issues
 

 Defendant argues the trial court erred by: (1) denying trial counsel's motion to withdraw from the case and asserts Defendant's trial counsel rendered ineffective assistance in three discreet ways; (2) denying Defendant's motion to continue and excluding negative character testimony against State's witness Kennon by Flowers and Thomas; and (3) determining the conspiracy to manufacture methamphetamine charge was a Class C felony, because the felony is properly classified as a Class D felony.
 

 III. Motion to Withdraw and Ineffective Assistance of Counsel
 

 Defendant argues the trial court erred in denying defense counsel's motion to withdraw from the case. He contends he received
 
 *841
 
 ineffective assistance of counsel following the trial court's denial of defense counsel's motion to withdraw.
 

 A. Standard of Review
 

 We review the denial of a motion to withdraw for abuse of discretion.
 
 State v. Thomas,
 

 350 N.C. 315
 
 , 329,
 
 514 S.E.2d 486
 
 , 495 (1999).
 

 In order to show ineffective assistance of counsel, a defendant must satisfy the two-prong test announced by the Supreme Court of the United States in
 
 Strickland v. Washington,
 

 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 , (1984). This test for ineffective assistance of counsel has also been explicitly adopted by the Supreme Court of North Carolina
 
 *143
 
 for state constitutional purposes.
 
 State v. Braswell,
 

 312 N.C. 553
 
 , 562-63,
 
 324 S.E.2d 241
 
 , 248 (1985). Pursuant to
 
 Strickland:
 

 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.
 

 466 U.S. at 687
 
 ,
 
 104 S.Ct. at 2064
 
 ,
 
 80 L.Ed.2d at
 
 693 ;
 
 accord
 

 Braswell,
 

 312 N.C. at 561-62
 
 ,
 
 324 S.E.2d at 248
 
 .
 

 Our Supreme Court has stated, "this Court engages in a presumption that trial counsel's representation is within the boundaries of acceptable professional conduct" when reviewing ineffective assistance of counsel claims.
 
 State v. Roache,
 

 358 N.C. 243
 
 , 280,
 
 595 S.E.2d 381
 
 , 406 (2004) (citation omitted). We "ordinarily do not consider it to be the function of an appellate court to second-guess counsel's tactical decisions [.]"
 
 State v. Lowery,
 

 318 N.C. 54
 
 , 68,
 
 347 S.E.2d 729
 
 , 739 (1986).
 

 B. Analysis
 

 N.C. Gen.Stat. § 15A-144 provides: "[t]he court may allow an attorney to withdraw from a criminal proceeding upon a showing of good cause." N.C. Gen.Stat. § 15A-144 (2013). In this case, Defendant's counsel requested the court allow him to withdraw from representing Defendant in this case. Defendant's counsel stated he did not "see eye-to-eye on everything" with Defendant and that he did not think he could "zealously represent [Defendant] at a trial based on the evidence" and the conversations they had. Defendant's counsel also mentioned Defendant was unable to "continue finish hiring" him.
 

 Our Supreme Court has held in order to "establish prejudicial error arising from the trial court's denial of a motion to withdraw, a defendant must show that he received ineffective assistance of counsel."
 
 State v. Thomas,
 

 350 N.C. 315
 
 , 328,
 
 514 S.E.2d 486
 
 , 495 (citation omitted),
 
 cert. denied,
 

 528 U.S. 1006
 
 ,
 
 120 S.Ct. 503
 
 ,
 
 145 L.Ed.2d 388
 
 (1999).
 

 *144
 
 In general, "claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal."
 
 State v. Stroud,
 

 147 N.C.App. 549
 
 , 553,
 
 557 S.E.2d 544
 
 , 547 (2001). However, an ineffective assistance of counsel claim brought on direct review "will be decided on the merits when the cold record reveals that no further investigation is required[.]"
 
 State v. Fair,
 

 354 N.C. 131
 
 , 166,
 
 557 S.E.2d 500
 
 , 524 (2001). "[O]n direct appeal, the reviewing court ordinarily limits its review to material included in the record on appeal and the verbatim transcript of proceedings, if one is designated."
 
 Id.
 
 at 167, 557 S.E.2d at 524-25 (citation omitted). "[S]hould the reviewing court determine that [ineffective assistance of counsel] claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent [motion for appropriate relief ("MAR") ] proceeding."
 
 Id.
 
 at 167, 557 S.E.2d at 525.
 

 Here, Defendant asserts he received ineffective assistance from his trial counsel in three ways: (1) when the trial court denied his motion to continue to allow him to secure
 
 *842
 
 witnesses on his behalf; (2) when defense counsel failed to request the court to produce a witness, Elps, from the jail to make an offer of proof of his testimony; and (3) when, after Writs were issued, defense counsel did not have Flowers and Thomas brought from the Department of Correction to impeach Kennon's truthfulness. We discuss each in turn.
 

 1. Trial Court's Denial of Defendant's Motion to Continue
 

 Defendant contends he received ineffective assistance of counsel and his due process rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States were violated when the trial court denied his motion to continue immediately prior to the commencement of Defendant's trial. We disagree.
 

 In
 
 State v. Rogers,
 

 352 N.C. 119
 
 ,
 
 529 S.E.2d 671
 
 (2000), our Supreme Court discussed the appropriate inquiry where ineffective assistance of counsel is alleged due to a denial of a motion to continue:
 

 While a defendant ordinarily bears the burden of showing ineffective assistance of counsel [under the
 
 Strickland
 
 standard], prejudice is presumed "without inquiry into the actual conduct of the trial" when "the likelihood that any lawyer, even a fully competent one, could provide effective assistance" is remote. A trial court's refusal to postpone a criminal trial rises to the level of a Sixth Amendment violation "only when surrounding circumstances justify"
 

 *145
 
 this presumption of ineffectiveness. "To establish a constitutional violation, a defendant must show that he did not have ample time to confer with counsel and to investigate, prepare and present his defense."
 

 352 N.C. at 125
 
 ,
 
 529 S.E.2d at 675
 
 (quoting
 
 United States v. Cronic,
 

 466 U.S. 648
 
 , 659-62,
 
 104 S.Ct. 2039
 
 , 2047,
 
 80 L.Ed.2d 657
 
 , 668-70 (1984) ;
 
 State v. Tunstall,
 

 334 N.C. 320
 
 , 329,
 
 432 S.E.2d 331
 
 , 336-37 (1993) ).
 

 The record shows Defendant had sufficient time to investigate, prepare and present his defense. Defendant was arrested on 30 January 2014, and indicted on 24 February 2014. Defendant testified he retained trial counsel "twenty-seven days after" being arrested. The trial court previously continued the case for one month, and Defendant's trial began on 8 September 2014, more than seven months after Defendant was arrested and roughly six months after he had retained counsel.
 

 Prior to trial, Defendant's counsel filed two Writs of Habeas Corpus ad Testificandum, and argued a motion to suppress. During trial, Defendant's counsel cross-examined each of the State's witnesses, and presented the testimony of four witnesses on Defendant's behalf, including Defendant's own testimony.
 

 Defendant had ample time to investigate, prepare, and present his defense.
 

 Id.
 

 Defendant has failed to show he received ineffective assistance of counsel by the trial court's denial of his motion to continue. The trial court did not err in denying Defendant's motion to withdraw or to continue on this ground.
 

 2. Failure to Make Offer of Proof Regarding Elps' Testimony
 

 Defendant contends he received ineffective assistance of counsel when his trial counsel failed to request the trial court bring Elps from the jail to make an offer of proof of his testimony. We hold the cold record is insufficient for us to rule on this claim. We dismiss the claim without prejudice to Defendant's right to re-assert the claim.
 

 As noted, a defendant alleging ineffective assistance of counsel must show that counsel's performance was deficient and the deficiency was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
 
 Strickland,
 

 466 U.S. at 687
 
 , 104 S.Ct. at 2064, 80 L.Ed.2d at 693 ;
 
 see also
 

 State v. Grooms,
 

 353 N.C. 50
 
 , 64,
 
 540 S.E.2d 713
 
 , 722 (2000). A defendant must demonstrate a reasonable probability that the trial result would have been different absent counsel's error.
 
 Strickland,
 

 466 U.S. at 687
 
 , 104 S.Ct. at 2064, 80 L.Ed.2d at 693.
 

 *146
 
 The trial court stated its belief that Elps' testimony would not be relevant, but nonetheless offered to allow Defendant to make an offer of proof regarding Elps' testimony:
 

 THE COURT: [T]his Court does not believe [Elps' testimony] would have relevance to the charges for which the defendant
 
 *843
 
 stands trial in this case, and would not grant a continuance for that.
 

 ...
 

 If you want to make an offer of proof as to that, I'll be happy to have the Sheriff bring [Elps] over.
 

 Defendant's counsel did not make an offer of proof as to Elps' testimony. Defendant's counsel stated "he [did not] think [he] would be able to do anything other than specific instances" of prior untruthful statements or conduct by Kennon.
 

 From the record and transcript, we are unable to determine whether failure to make an offer of proof under these facts constitutes ineffective assistance of counsel. No affidavit tends to show what Elps would have testified to. Although Defendant's trial counsel stated he believed Elps could only testify as to specific instances of Kennon's untruthfulness, we are unable to ascertain whether Elps' testimony would have been relevant and admissible. We are also unable to determine whether trial counsel's failure to make an offer of proof of Elps' testimony made his conduct deficient, nor whether the deficiency, if present, was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693 ;
 
 Grooms,
 

 353 N.C. at 64
 
 ,
 
 540 S.E.2d at 722
 
 .
 

 Because we determine Defendant has prematurely asserted an ineffective assistance of counsel claim as to this ground, we "dismiss [the] claim [ ] without prejudice to [Defendant's] right to reassert [it] during a subsequent MAR proceeding."
 
 Fair,
 

 354 N.C. at 167
 
 , 557 S.E.2d at 525 (citation omitted).
 

 3. Failure to Offer Flowers' and Thomas' Testimony
 

 Defendant argues he received ineffective assistance of counsel when his trial counsel failed to call Flowers and Thomas as witnesses to testify regarding the untruthfulness of Kennon. The record and transcript are again insufficient for us to rule on this claim. We dismiss this ground without prejudice to Defendant's right to reassert the claim in a subsequent MAR proceeding.
 

 *147
 
 The first step to an ineffective assistance of counsel claim is to show the counsel's performance was deficient.
 
 Strickland,
 

 466 U.S. at 687
 
 , 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Defendant claims his counsel was deficient with regard to the offering of Flowers' and Thomas' testimony in two ways: first, Defendant claims there is "no indication defense counsel even took the effort to apply for Writs of Habeas Corpus ad Testificandum for [Flowers and Thomas]." Second, Defendant claims his counsel's failure to call Flowers and Thomas as witnesses constituted deficient performance, because these witnesses would have provided testimony as to the untruthfulness of Kennon, the State's "most crucial witness."
 

 We find no merit in Defendant's initial assertion. The record contains an Application and Writ of Habeas Corpus ad Testificandum for both Flowers' and Thomas' testimony. Defense counsel was not deficient in failing to apply for Writs of Habeas Corpus ad Testificandum. The record shows defense counsel did in fact apply for such writs, they were issued by the trial court, and delivered to the Sheriff for service.
 

 As to Defendant's second assertion, on the record before us, we are unable to determine whether defense counsel's failure to call Flowers and Thomas to testify constituted trial strategy or ineffective assistance of counsel. No offer of proof regarding Flowers' and Thomas' testimony was presented. The record does not contain affidavits revealing what Flowers and Thomas would have testified to.
 

 We are unable to determine whether defense counsel's failure to call Flowers and Thomas as witnesses was trial strategy or deficient performance, or whether the deficiency, if present, was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
 
 Strickland,
 

 466 U.S. at 687
 
 , 104 S.Ct. at 2064, 80 L.Ed.2d at 693 ;
 
 Grooms,
 

 353 N.C. at 64
 
 ,
 
 540 S.E.2d at 722
 
 .
 

 Because we determine Defendant prematurely asserted an ineffective assistance of counsel claim on this ground, we also "dismiss [this] claim[ ] without prejudice to [Defendant's] right to reassert [it] during a subsequent MAR proceeding."
 
 Fair,
 

 354 N.C. at 167
 
 , 557 S.E.2d at 525 (citation omitted).
 

 *844
 

 IV. Motion to Continue
 

 Defendant argues the trial court erred by denying two motions to continue: one immediately preceding trial, and the other immediately preceding his own testimony. Defendant based both motions on the premise that two of his witnesses, Flowers and Thomas, were not available to testify despite writs being issued to ensure their attendance
 
 *148
 
 at trial. Defendant asserts Flowers' and Thomas' testimony as to the untruthfulness of a key State's witness, Kennon, would likely have resulted in Defendant's acquittal.
 

 A. Standard of Review
 

 A trial court may allow or deny a motion to continue in its sound discretion. Its decision will not be overturned absent a gross abuse of discretion.
 
 State v. Jones,
 

 172 N.C.App. 308
 
 , 311-12,
 
 616 S.E.2d 15
 
 , 18 (2005) (citations omitted). An abuse of discretion "results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Hennis,
 

 323 N.C. 279
 
 , 285,
 
 372 S.E.2d 523
 
 , 527 (1988) (citation omitted).
 

 Where the trial court's denial of a motion to continue raises a constitutional issue, it is "fully reviewable [on appeal] by examination of the particular circumstances presented by the record on appeal of each case."
 
 State v. Branch,
 

 306 N.C. 101
 
 , 104,
 
 291 S.E.2d 653
 
 , 656 (1982) (citation omitted). "To establish [the denial of a motion to continue rises to] a constitutional violation, a defendant must show that he did not have ample time to ... investigate, prepare, and present his defense."
 
 State v. Williams,
 

 355 N.C. 501
 
 , 540,
 
 565 S.E.2d 609
 
 , 632 (2002) (citation and quotation marks omitted).
 

 B. Analysis
 

 As explained
 
 supra,
 
 the trial court did not err in denying Defendant's motion to continue immediately prior to trial. Defendant had ample time to investigate, prepare and present his defense after receiving a prior continuance. We examine Defendant's argument regarding the trial court's denial of Defendant's motion to continue made immediately prior to Defendant's testimony.
 

 During Defendant's case at trial, Defendant made two consecutive motions to continue. One motion concerned the testimony of Elps, and the other concerned the testimony of Flowers and Thomas:
 

 THE COURT: All right. [Defendant's counsel], you have some motion you want-
 

 [Defendant's Counsel]: I do, Your Honor. We would-I would like to call one witness, a Brandon Elps, for the purposes of testifying to the truth of Ms. Kennon. He's over in custody in our jail. It would be limited to the fact-of testimony, that she had, in previous occasions, gotten him in
 
 *149
 
 trouble, went to the law on him and all that. So that would be my motion, to have him over here.
 

 And the other two witnesses would be-and the other two would be for Cassie Flowers in the Department of Corrections, and Mark Thomas. They, too, would be witnesses to show-testify to the untruthfulness of Ms. Kennon and things that she had said and done in the past.
 

 And I would make a motion to continue, to get those witnesses here.
 

 After the motions were made, the trial court discussed Flowers and Thomas, but only issued a ruling denying Defendant's motion to continue regarding Elps' testimony:
 

 THE COURT: It would appear to the Court that any writ ... that was issued by this Court was done last Thursday, September the 4th, and the trial was scheduled-was due to start the 8th, and the person, Ms. Flowers, is not currently in the Carteret County jail and neither is Mark Thomas, is my understanding.
 

 As to the other one, testifying about some alleged bad act of Heather Kennon at some earlier time without any connection to this case, would-this Court does not believe would have relevance to the charges for which the defendant stands trial in this case, and would not grant a continuance for that.
 

 The trial court offered to allow Defendant to make an offer of proof regarding Elps' testimony, which Defendant failed to do. The court did not make a ruling on Defendant's motion to continue to allow for Flowers' and Thomas' testimony. Defendant failed to ask the court for a ruling on the issue.
 

 *845
 
 Under the North Carolina Rules of Appellate Procedure, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion[.] ... It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion." N.C. R.App. P. 10(a)(1). Because Defendant "did not obtain a ruling by the trial court on this issue, it is not properly preserved for appeal."
 
 Lake Toxaway Cmty. Ass'n v. RYF Enters., LLC,
 

 226 N.C.App. 483
 
 , 493,
 
 742 S.E.2d 555
 
 , 562 (2013) (citation omitted);
 
 see also
 

 State v. Jaynes,
 

 342 N.C. 249
 
 ,
 
 464 S.E.2d 448
 
 (1995),
 
 cert. denied,
 

 *150
 

 518 U.S. 1024
 
 ,
 
 116 S.Ct. 2563
 
 ,
 
 135 L.Ed.2d 1080
 
 (1996). Pursuant to N.C. R.App. P. 10(a)(1), we dismiss Defendant's argument as partially unpreserved.
 

 V. Conspiracy to Manufacture Methamphetamine Sentencing
 

 Defendant contends the trial court erred determining the proper felony class of conspiracy to manufacture methamphetamine charge. He asserts that although conspiracy to manufacture methamphetamine is a Class C felony, he should have been sentenced to a felony one class lower than was committed pursuant to N.C. Gen.Stat. § 14-2.4(a) (2013). We disagree.
 

 A. Standard of Review
 

 "When a defendant assigns error to the sentence imposed by the trial court our standard of review is whether the sentence is supported by evidence introduced at the trial and sentencing hearing."
 
 State v. Chivers,
 

 180 N.C.App. 275
 
 , 278,
 
 636 S.E.2d 590
 
 , 593 (2006) (citation and brackets omitted),
 
 disc. rev. denied,
 

 361 N.C. 222
 
 ,
 
 642 S.E.2d 709
 
 (2007).
 

 B. Analysis
 

 N.C. Gen.Stat. § 14-2.4(a) provides: "
 
 Unless a different classification is expressly stated,
 
 a person who is convicted of a conspiracy to commit a felony is guilty of a felony that is one class lower than the felony he or she conspired to commit[.]" N.C. Gen.Stat. § 14-2.4(a) (emphasis supplied). Here, Defendant was found guilty of conspiracy to manufacture methamphetamine in violation of N.C. Gen.Stat. § 90-95(b)(1a) (2013). N.C. Gen.Stat. § 90-95(b)(1a) "expressly" provides, in relevant part: "The manufacture of methamphetamine shall be punished as a Class C felony[.]" N.C. Gen.Stat. § 90-95(b)(1a).
 

 N.C. Gen.Stat. § 90-95(b)(1a) is a part of Article 5 of Chapter 90 of the General Statutes, designated by our General Assembly as the North Carolina Controlled Substances Act ("CSA").
 
 See
 
 N.C. Gen.Stat. § 90-86 (2013). N.C. Gen.Stat. § 90-98, another section of the CSA, provides:
 

 Except as otherwise provided in this Article, any person who attempts or conspires to commit any offense defined in this Article is guilty of an offense that is the same class as the offense which was the object of the attempt or conspiracy and is punishable as specified for that class of offense and prior record or conviction level in Article 81B of Chapter 15A of the General Statutes.
 

 N.C. Gen.Stat. § 90-98 (2013). N.C. Gen.Stat. § 90-95(b)(1a) does not provide a lesser sentence for a person convicted of conspiracy to
 
 *151
 
 manufacture methamphetamine. Under N.C. Gen.Stat. § 90-98, it is " expressly stated" that a defendant convicted of conspiracy to manufacture methamphetamine is properly to be sentenced to the same class of felony as a defendant convicted of the manufacture of methamphetamine. The trial court did not err in sentencing Defendant as a Class C felon upon his conviction for conspiracy to manufacture methamphetamine in violation of N.C. Gen.Stat. § 90-95(b)(1a). N.C. Gen.Stat. § 90-98. Defendant's argument is overruled.
 

 VI. Conclusion
 

 Defendant had ample time to investigate, prepare, and present his defense and received a prior continuance. The trial court did not err in declining to grant Defendant's motion to continue immediately prior to trial, and he did not receive ineffective assistance of counsel on this issue.
 

 From the cold record, we are unable to determine whether defense counsel's failure to make an offer of proof regarding Elps' testimony or defense counsel's failure to call Flowers and Thomas to testify regarding
 
 *846
 
 Kennon's untruthfulness constituted trial strategy or conduct that may rise to ineffective assistance of counsel. We dismiss these arguments without prejudice to Defendant's right to pursue these claims in a subsequent MAR proceeding.
 

 The trial court did not abuse its discretion in denying Defendant's motion to continue immediately prior to trial. This argument is overruled. Defendant failed to obtain a ruling by the trial court on his motion to continue immediately prior to his testimony. We dismiss this argument as unpreserved.
 

 The trial court did not err in sentencing Defendant as a Class C felon on the charge of conspiracy to manufacture methamphetamine.
 

 Id.
 

 Defendant received a fair trial, free from prejudicial errors he preserved and argued. Defendant's claims of ineffective assistance of counsel on Elps' offer of proof and failure to call Flowers and Thomas to testify are dismissed without prejudice.
 

 NO ERROR IN PART; DISMISSED IN PART.
 

 Judges McCULLOUGH and DIETZ concur.