McGEE, Chief Judge.
Frederick Eugene Sullivan ("Defendant") appeals from judgment after a jury found him guilty of two counts of second-degree rape, six counts of second-degree sexual offense, and one count each of assault on a female and communicating threats.
I. Background
L.W., a female student at Johnson C. Smith University ("JCSU") in Charlotte, North Carolina, was walking to campus when she was approached by Defendant sometime in August or September of 2013. Defendant introduced himself as "Romeo," and told L.W. she was pretty and asked for her name and phone number. L.W. thought Defendant was a "cool guy," so she gave her name and number to him and they began texting. During the course of their text exchanges, Defendant told L.W. that he wanted to perform oral sex on her. L.W. told Defendant she was gay and therefore uninterested in dating him, which Defendant "seem[ed] to ... accept."
On multiple occasions between their first meeting and 26 October 2013, L.W. met Defendant at a construction trailer across the street from JCSU's campus to receive marijuana from him. L.W. never paid Defendant for the marijuana. L.W. testified that she thought Defendant was giving marijuana to her for free for no reason other than to "be nice." At some point, Defendant began to text L.W. asking for "panty pictures." L.W. wanted to keep receiving marijuana from Defendant, so she sent him several pictures of her stomach.
Defendant texted L.W. on 25 October 2013 asking if she would come to the construction trailer to "cuddle" with him. L.W. testified that although she had no intention of joining Defendant that day, she nevertheless texted Defendant to tell him she might come and "cuddle" with him. The next day, Defendant texted L.W. to ask for another "panty picture." L.W. sent another picture of her stomach "so [she] could keep getting the [marijuana]." Defendant again asked L.W. if she was going to come to the trailer, and told her that he "had the loud on deck," which L.W. explained was slang meaning he had marijuana for her, and she agreed to come.
While at the trailer, L.W. mentioned that she was going to be attending a concert that night, and Defendant offered her fifty dollars. Defendant did not give her the money at that time, but they made plans to meet up later that day. Later in the day, Defendant made contact with L.W. and asked "why he [Defendant] just paid $300.00 to a campus police officer." L.W. testified Defendant appeared angry, and that she decided to go to the trailer to figure out what he was talking about.
L.W. arrived at the trailer around 6:00 p.m., and Defendant again asked her why he had paid $300.00 to a JCSU campus police officer. Defendant then "rushed up on [L.W.]" and placed her in a chokehold. After a short skirmish, L.W. managed to free herself from Defendant's grasp. Defendant told L.W. someone had told him she was wearing a wire, so Defendant told L.W. to remove her clothing, which she did, and Defendant checked her body for a wire.
L.W. testified that Defendant then told her that Defendant's manager told him to "get rid of [L.W.] ... and no one will miss [her]." When Defendant did not find a wire on her body, he insisted that she was hiding the wire in her vagina. L.W. told Defendant that he could check between her legs, which he did. L.W. then told Defendant to give her oral sex instead of having sex with her, which he proceeded to do. L.W. said she told Defendant to do this because he had "already talked about doing it [performing oral sex on her] before, so [she] just wanted him to just do it and let [her] leave." However, Defendant did not let her leave until he had performed oral sex on her a total of four times, attempted vaginal penetration twice, and forced L.W. to perform oral sex on him once. The entire encounter lasted about five hours, until 11:00 p.m., and Defendant gave L.W. fifty dollars as she was leaving.
Defendant was indicted on two counts of second-degree rape, six counts of second-degree sexual offense, and one count each of assault on a female and communicating threats on 9 December 2013. At trial, the State sought to introduce videos and transcripts of two interviews ("the transcripts"), conducted 13 February 1998 and 22 September 2000, between law enforcement and Defendant. The interviews were conducted in relation to investigations of prior sexual assault allegations made against Defendant. Outside the presence of the jury, the State informed the court that it had elected to make some redactions to the transcripts and mute certain portions of the video to omit inadmissible information.[1] The State also stated that it would introduce both an unredacted and a redacted copy of the transcripts "just for the record."
The State ultimately introduced three exhibits relating to each interview: (1) a video of each interview, known as State's exhibits 41 and 45, that contained pauses omitting certain objectionable information; (2) an unredacted version of the transcript of each interview, known as State's exhibits 42 and 46; and (3) a redacted version of the transcript of each interview, known as State's exhibits 43 and 47. The record appears to show that the State published to the jury State's exhibits 41 and 42-the video and the unredacted transcript of the 1998 interview with Defendant:
[Prosecutor]: What do you recognize-what do you recognize State's exhibit 41 to be?
[Witness]: This is a CD of the [13 February 1998] interview I had with [Defendant].
....
[Prosecutor]: I am also showing you what's been previously marked as State's Exhibit 42. Do you recognize this item?
[Witness]: I do.
[Prosecutor]: What do you recognize it to be?
[Witness]: This is a transcript of the interview that I did with [Defendant on 13 February 1998] as well.
....
[Prosecutor]: Your Honor, at this time we would seek to publish State's Exhibit 41 and 42, and we would request a limiting instruction on State's Exhibit 42-41 and 42.
....
(State's Exhibits 41 and 42 published to the jury. Audio recording played)
The record also appears to show that the State published to the jury State's exhibits 45 and 46-the video and the unredacted transcript of the 2000 interview with Defendant:
[Prosecutor]: ... I'm handing you what I have marked as State's Exhibits 45 and 46. Do you recognize State's Exhibit 45?
[Witness]: I do. ... This is a transcript of a cassette tape that was transferred to a disk from the original interview that was taken back in 2000[.]
....
[Prosecutor]: State's exhibit 46, is that ... a fair and accurate transcription of State's Exhibit 45?
[Witness]: Yes.
....
[Prosecutor]: Request to publish State's Exhibits 45 and 46 to the jury.
THE COURT: You may.
....
(State's Exhibits 45 and 46 published to the jury. Audio recording played)
Defendant did not object to admitting or publishing State's exhibits 41, 42, 45, or 46. At the time these exhibits were published to the jury, the trial court gave an instruction warning the jurors to disregard the pauses in the audiotape and that they were to "only ... consider the information that [they] hear[d] and review[ed] in making [their] decision."
The State also called three witnesses, N.M., V.B., and C.O., and their testimony was admitted pursuant to N.C. Gen. Stat. § 8C-1, Rule 404(b) ("the 404(b) witnesses"). The 404(b) witnesses had each previously accused Defendant of sexual assault, and testified regarding their allegations. Before the 404(b) witnesses testified, the State submitted a motion in limine seeking to prohibit Defendant from "asking witnesses any questions, or seeking to admit any other type of evidence, regarding the disposition of cases related to any evidence submitted" pursuant to N.C. G.S. § 8C-1, Rule 404(b)."[2] The State argued that the disposition of past cases is "not relevant to be presented to the jury" and suggested that soliciting such evidence would be contrary to North Carolina precedent. Defendant's counsel responded:
Although I certainly disagree that disposition doesn't have any probative value, I also understand what the case law says, and the North Carolina Supreme Court and Court of Appeals probably doesn't care that I disagree with that reason although for the record I do. However, I want to make sure I know what the parameters are here. And by that, I mean, any inquiry into, well, you know, the case was dismissed, obviously, can't do that, or do you know what happened to these cases, anything like that directly-directly involving the disposition of these cases, I understand what the Court's ruling on that will likely be given the case law and I have no intention of asking those questions.
Defense is more curious, Your Honor, as to questions along the lines of have you previously testified about what you're speaking about? Have you ever said this before a jury before? Have you ever been questioned by someone representing Mr. Sullivan before on these matters? The defense's contention, Your Honor, that those are fair game. They have nothing to do with disposition. Have to do with whether what this witness is alleging today has been inquired in to in the past and who's inquired into-the form in which it's been inquired into, which I think is relevant for the jury to determine whether this is something that has been put to the test before. Has nothing to do with disposition or anything of the sort but simply has it been inquired into, where, by whom.
The State then conceded that whether the "matters" had "been inquired to [sic]" was relevant. The following colloquy then occurred between the trial court and Defendant's counsel:
THE COURT: Court will allow the defense to question the witness as to whether or not they have ever made these statements in front of an individual representing [Defendant] or that these prior statements have ever been made under oath, but as far as anything related to a jury or that would start to bring us inside a courtroom, that is out of that.
[Defendant's counsel]: And so just I'm clear and Your Honor was clear, I can ask the witness have you ever-have you ever made these statements under oath prior to today?
THE COURT: That's correct.
[Defendant's counsel]: Okay. I cannot inquire have you ever made these statements before a jury prior to today?
THE COURT: Right.
[Defendant's counsel]: Okay. That's the line of demarcation?
THE COURT: Or at trial or in any form appearing.
[Defendant's counsel]: Okay.
THE COURT: Okay. But, in other words, you can talk whether or not they've been made under oath, if the statement was made under oath or has been made under oath and whether or not it has ever been made in the presence of anyone representing [Defendant].
[Defendant's counsel]: I understand the Court's ruling, Your Honor. I'll limit my questions to that.
THE COURT: And you wish to place an objection as to your other arguments on the record for appeal?
[Defendant's counsel]: I do, Your Honor. By that, I'd like to preserve the objection, but I understand the Court's ruling.
THE COURT: Right. Well, I just want to make sure that you had it on the record for your purposes.
Defendant was convicted of all counts in the indictment, and he was sentenced to four separate terms of between 110 and 192 months in prison, to be served consecutively. Defendant appeals.
II. Analysis
Defendant asserts two arguments on appeal. First, he argues his Confrontation Clause rights were violated when the State published to the jury unredacted transcripts of two interviews between himself and law enforcement. Second, Defendant argues the trial court erred in prohibiting him from introducing evidence concerning the disposition of charges relating to the 404(b) witnesses who testified regarding Defendant's past sexual conduct.
A. Confrontation Clause
Defendant first argues that the State published unredacted transcripts of his interviews with police to the jury, and that such publication violated his rights under the Sixth Amendment's Confrontation Clause. The Confrontation Clause, made applicable to the States through the Fourteenth Amendment, e.g. Pointer v. Texas , 380 U.S. 400, 403-405 (1965) ; Davis v. Alaska , 415 U.S. 308, 315 (1974), provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. This Court has stated that "[a] fundamental aspect of that right to confrontation is that a jury's verdict must be based on evidence produced at trial , not on extrinsic evidence which has escaped the rules of evidence, supervision of the court, and other procedural safeguards of a fair trial." State v. Lyles , 94 N.C. App. 240, 247, 380 S.E.2d 390, 394-95 (1989) (emphasis in original) (citing Parker v. Gladden , 385 U.S. 363, 364, 17 L.Ed. 2d 420, 422-23 (1966) ).
As a preliminary matter, we must determine whether, as Defendant insists, unredacted versions of the transcripts of the 1998 and 2000 interviews between Defendant and law enforcement were actually published to the jury. After reviewing the transcript, we believe it is not at all certain that publication of the unredacted versions of the transcripts occurred. As noted, the State introduced three exhibits relating to each interview: (1) State's exhibit's 41 and 45, video recordings of each interview; (2) State's exhibits 42 and 46, the unredacted version of the transcript of each interview; and (3) State's exhibits 43 and 47, the redacted version of the transcript of each interview. It is true that the transcript reflects that the State introduced and published to the jury State's exhibits 41, 42, 45, and 46-the video recordings and the un redacted transcripts. However, at the time of publication, the trial court gave a limiting instruction instructing the jury to disregard pauses in the video recording of the interview that was played in open court, and to base its decision only on the information it "hear[d] and review[ed]." It would be inexplicable for the State-in open court and with Defendant and his counsel present-to introduce a video recording which muted some portions of the conversation, only to provide the jury with an unredacted transcript filling in those pauses. We believe it likely that the prosecutor in fact introduced the redacted transcripts along with the video of the interviews.
However, a strict reading of the transcript suggests that State's exhibits 42 and 46-the unredacted versions of the transcripts-were published to the jury. We do not find Defendant's reading of the trial transcript to be so "strained" as to be unreasonable. State v. Rankin , 304 N.C. 577, 581, 284 S.E.2d 319, 322 (1981) (rejecting a defendant's "strained interpretation of the record" for "the more reasonable interpretation"). Therefore, however unlikely, we will assume that the unredacted transcripts of Defendant's 1998 and 2000 interviews with law enforcement were published to the jury for the purpose of our analysis.
Even making that assumption, the State argues that Defendant failed to raise a Confrontation Clause argument at trial, and such a failure waives appellate review of the issue. Our Supreme Court has long held "constitutional matters that are not raised and passed upon at trial will not be reviewed for the first time on appeal." State v. Garcia , 358 N.C. 382, 410, 597 S.E.2d 724, 745 (2004) (citations and internal quotation marks omitted); see also N.C. R. App. P. 10(a)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion[.]").
Defendant responds by arguing in his brief to this Court that the unredacted transcripts were published to the jury in secret, and without the knowledge of the trial court or the defense. Therefore, Defendant argues, the extrinsic evidence "escaped the rules of evidence, supervision of the court, and other procedural safeguards of a fair trial." State v. Lyles , 94 N.C. App. 240, 247, 380 S.E.2d 390, 394-95 (1989). We disagree. Even assuming that the unredacted transcripts were published to the jury, such publication occurred in open court and in full view of the trial court, Defendant, and Defendant's trial counsel. When the publication of each unredacted transcript occurred, the prosecutor unambiguously made it known that the State sought to admit, and publish to the jury, State's exhibits 42 and 46, which had been previously identified as the unredacted transcripts. We are unmoved by Defendant's argument that State v. Keel , 333 N.C. 52, 423 S.E.2d 458 (1992) compels a conclusion that his Confrontation Clause argument was preserved without objection.
In Keel , a first-degree murder case, the State requested during the charge conference that the trial court give the pattern jury instruction for first-degree murder. 333 N.C. at 56, 423 S.E.2d at 461. The defendant's counsel did not have any objections to the use of the pattern jury instruction, and the trial court agreed to give the instruction. Id. During the jury charge, however, the trial court deviated from the agreed upon instruction and added additional language not found in the pattern jury instruction. Id. at 57, 423 S.E.2d at 461-62. Although the defendant failed to object at the time the instruction was given, on appeal this Court held that "[t]he State's request, approved by the defendant and agreed to by the trial court, satisfied the requirements of Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure and preserved this question for review on appeal." Id. at 56-57, 423 S.E.2d at 461 (citations omitted).
Keel does not stand for the proposition that all potential evidentiary errors are preserved without objection if the State agrees to one course of action but later pursues another. Rather, Keel represents a specific and longstanding exception in the context of jury instructions that provides a trial court's deviation from agreed upon instructions is preserved notwithstanding the lack of an objection at the time the instruction is given. See id. ; see also State v. Montgomery , 331 N.C. 559, 570, 417 S.E.2d 742, 748 (1992) (holding that a defendant's "written request for a particular instruction" met the requirements of the applicable appellate rule "and constituted a sufficient objection to the different instruction actually given to preserve" the issue despite the lack of an objection); State v. Ross , 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988) (holding that "a request for an instruction at the charge conference is sufficient compliance" with the appellate rules to warrant "our full review on appeal," notwithstanding a lack of objection when the instruction was given).
Here, the State agreed to mute audio portions of the video and to introduce a redacted transcript to the jury that omitted the conversation muted on the video. Assuming the State did not follow through on that agreement, it did so in open court where Defendant had ample notice and opportunity to object. Because Defendant failed to do so, we analyze his Confrontation Clause argument for plain error.[3] The plain error rule
is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the ... mistake had a probable impact on the jury's finding that the defendant was guilty."
State v. Cummings , 352 N.C. 600, 616, 536 S.E.2d 36, 49 (2000) (emphasis in original) (quoting State v. Odom , 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) ). To prevail, a defendant must show "not only that there was error, but that absent the error, the jury probably would have reached a different result." State v. Haselden , 357 N.C. 1, 13, 577 S.E.2d 594, 602 (2003) (internal quotations and citation omitted). Plain error review proceeds in two steps: "The first step under plain error review is ... to determine whether any error occurred at all. ... [I]n the second step, the defendant must show that any error was fundamental by establishing that the error had a probable effect on the verdict." State v. Oxendine , --- N.C. App. ----, ----, 783 S.E.2d 286, 292 (2016).
Relying principally on State v. Hines , 131 N.C. App. 457, 508 S.E.2d 310 (1998), Defendant contends that his Confrontation Clause rights were violated when the jury was exposed to the unredacted transcripts of the conversations between Defendant and law enforcement. We find Hines significantly different than, and therefore distinguishable from, the present case. In Hines , the State admitted more than forty exhibits in connection with the testimony of a key witness. Id. at 459, 508 S.E.2d at 312. At the time the publication was made, the State inadvertently published to the jury "portions of the prosecutor's case file which had not been admitted into evidence." Id. (emphasis in original). The unadmitted and errantly published notes included "eight pages of the prosecutor's handwritten notes" and "two pages of a typewritten transcription of statements [a law enforcement officer] alleged [the d]efendants had made to others." Id. The documents "contained generally inadmissible information, notably hearsay testimony implicating both [of the defendants] in the shoot-out, and what appeared to be [one of the defendant's] criminal record of drug-related convictions[.]" Id. at 462, 508 S.E.2d at 314. On appeal, this Court held that the publication of these unadmitted and inadvertently published notes violated the defendants' Confrontation Clause rights:
In this case, it is undisputed that the jury was exposed to extrinsic evidence. The prosecutor's notes and a typewritten list of statements allegedly made by [the d]efendants were inadvertently published to the jury without being admitted by the trial court .... [The d]efendants' confrontational rights were therefore violated by the publication of these documents to the jury.
Id . (emphasis added) (citations omitted).
In stark contrast to the facts in Hines , in the present case no evidence was inadvertently published to the jury without first being admitted by the trial court. Instead, the State announced that it sought to introduce and publish to the jury State's exhibits 42 and 46. Defendant's counsel stated that he had no objection to the admittance or publication of these exhibits. Even assuming the unredacted transcripts contained inadmissible information, because they were admitted in open court and with an opportunity for Defendant to object and to cross-examine the officers regarding the exhibits, such publication did not violate the Confrontation Clause of the Sixth Amendment to the United States Constitution.[4]
Because we have found under the first step of plain error review that no "error occurred at all," we need not determine whether any error was "fundamental" by having a "probable effect on the verdict." Oxendine , ---N.C. App. at ----, 783 S.E.2d at 292.
B. Prohibition of Evidence Relating to Disposition of Past Sexual Assault Cases
Next, Defendant argues the trial court erred by prohibiting him from introducing evidence concerning the disposition of charges relating to the 404(b) witnesses who testified about Defendant's past sexual conduct. The State contends, and we agree, that Defendant has failed to preserve this argument for appellate review. Pursuant to the North Carolina Rules of Appellate Procedure:
In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.
N.C.R. App. P. 10(a)(1) (2015) (emphasis added). In the present case, the State made a motion in limine seeking to prohibit Defendant from soliciting information regarding the disposition of charges in the cases related to the 404(b) witnesses. In response to the State's motion, Defendant's counsel made it known that while he believed that the disposition of past cases had probative value, he understood what the court's ruling would "likely be" and stated that he had "no intention of asking" questions relating to the disposition of the past cases.
Defendant's counsel then moved on to another topic, and argued that he should be permitted to ask the 404(b) witnesses whether they had ever testified before a jury regarding their sexual assault allegations. After protracted discussion on the latter topic, the trial court ruled that Defendant could inquire "as to whether or not [the 404(b) witnesses] have ever made" their sexual assault allegations "in front of an individual representing [Defendant]," but was not permitted to question the 404(b) witnesses regarding whether they had ever made their allegations before a jury. The trial court then asked Defendant if he wished to "place an objection as to your other arguments on the record for appeal," and Defendant's counsel indicated that he did. However, the trial court never ruled on whether Defendant could inquire into the disposition of the 404(b) witnesses' cases. It had no reason to do so, as Defendant's counsel affirmatively stated that he had "no intention" of asking any questions regarding the disposition of the past cases, before the trial court ruled on whether he could do so; therefore, the court never ruled on the specific issued raised in the State's motion in limine . We decline to treat a general statement by Defendant's counsel that he disagreed that "disposition doesn't have any probative value" as a proper preservation of this issue for our review, especially considering that Defendant failed to obtain a ruling on the issue. "Because Defendant 'did not obtain a ruling by the trial court on this issue, it is not properly preserved for appeal.' " State v. Warren , --- N.C. App. ----, ----, 780 S.E.2d 835, 845 (2015) (quoting Lake Toxaway Cmty. Ass'n v. RYF Enters., LLC , 226 N.C. App. 483, 492, 742 S.E.2d 555, 562 (2013) ).
While unpreserved evidentiary issues are normally reviewed for plain error, see, e.g. , State v. Collins , 216 N.C. App. 249, 254-55, 716 S.E.2d 255, 259-260 (2011), a defendant must "specifically and distinctly contend that the alleged error constituted plain error" in order to be entitled to plain error review. Lawrence , 365 N.C. at 516, 723 S.E.2d at 333. Since Defendant did not specifically and distinctly contend in his brief to this Court that this issue amounted to plain error, the correct disposition is to dismiss this argument as unpreserved. Warren , --- N.C. App. at ----, 780 S.E.2d at 845.
NO ERROR IN PART; DISMISSED IN PART.
Report per Rule 30(e).
Judges BRYANT and ENOCHS concur.

The information omitted from the video and the redacted transcripts included, inter alia, Defendant's statements that he: (1) was on trial for rape in another case; (2) had been charged with domestic violence in the past; and (3) had been accused of beating and raping a former girlfriend.

At trial, the prosecutor informed the court that: (1) Defendant pleaded guilty to felonious restraint and assault on a female in the case regarding N.M.; (2) Defendant pleaded guilty to felonious restraint and kidnaping in the case regarding V.B.; and (3) the charges were dismissed in the case regarding C.O.

To be entitled to plain error review, a defendant must "specifically and distinctly contend that the alleged error constituted plain error." State v. Lawrence, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012). Here, Defendant has done so. Our Supreme Court has held that plain error review is available for constitutional issues rooted in evidentiary or jury instructional errors. E.g., State v. Lemons, 352 N.C. 87, 95, 530 S.E.2d 542, 547 (2000), cert. denied, 531 U.S. 1091, 148 L.Ed. 2d 698 (2001) ("[D]efendant's failure to object at trial and properly preserve the constitutional issue for appeal requires us to review this potential constitutional error under the plain error standard of review[.]").

While not dispositive, we also note that some courts have held that a Confrontation Clause violation cannot arise from the admission of a defendant's own prior statements. See, e.g., United States v. Brown, 441 F.3d 1330, 1358-59 (11th Cir. 2006) (admission of defendant's own statements does not violate the Confrontation Clause, since a defendant does not have the right to confront himself); State v. Telles, 261 P.3d 1097, 1103 (N.M. Ct. App. 2011) (holding that a "[d]efendant's own statements ... [are] non-testimonial and do not violate the Confrontation Clause").