An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-489

Filed 18 February 2026

Alexander County, Nos. 21CR051578-010, 21CR051579-010, 21CR051580-010

STATE OF NORTH CAROLINA

v.

TONY TIMOTHY MARTIN

Appeal by defendant from judgments entered 12 June 2024 by Judge Tonia A. Cutchin in Alexander County Superior Court. Heard in the Court of Appeals 13 January 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Jodi L. Regina, for the State.*

> *Michelle Abbott for defendant-appellant.*

ZACHARY, Judge.

Defendant Tony Timothy Martin appeals from the trial court's judgments entered upon a jury's verdicts finding him guilty of felony assault with a deadly weapon on a government official, resisting a public officer, misdemeanor fleeing to elude arrest with a motor vehicle, misdemeanor unauthorized use of a motor vehicle, and two counts of injury to personal property. On appeal, Defendant argues that he

received the ineffective assistance of trial counsel. After careful review, we conclude that Defendant received a fair trial, free from error, and did not receive ineffective assistance of counsel.

## I.     Background

Defendant's case came on for jury trial on 3 June 2024 in Alexander County Superior Court.

Evidence presented at trial tended to show the following: In the early morning hours of 17 December 2021, Sergeant Jordan Barnes of the Alexander County Sheriff's Office witnessed Defendant run a stop sign while "traveling at a high rate of speed." Sergeant Barnes then began following Defendant and witnessed him run a red light and make an illegal turn to drive around a tractor trailer. Sergeant Barnes activated his blue lights and siren to initiate a traffic stop but Defendant continued driving while Sergeant Barnes followed him. The posted speed limit for the stretch of road on which Defendant and Sergeant Barnes traveled was 55 miles per hour; however, during the chase, Defendant's and Sergeant Barnes's speed varied from 70 to "a little over 100" miles per hour.

At one point, when the vehicles were traveling at "close to 100 miles per hour," Defendant "slam[med] on the brakes and stop[ped] in the middle of the road," which "almost caus[ed] [Sergeant Barnes] to rear-end him." Defendant exited his vehicle and began walking toward Sergeant Barnes's patrol vehicle while "saying something." Defendant then got back into his vehicle and started driving again,

moving at a high rate of speed and crossing the center line of the road. Sergeant Barnes contacted a fellow officer—Deputy Dylan Adams of the Alexander County Sheriff's Office—who deployed "the stop sticks."

After driving over the stop sticks, Defendant drove a short distance, stopped, and exited his vehicle. Sergeant Barnes exited his vehicle and directed Defendant "[t]o stop and let [him] see his hands, to get on the ground"; Defendant refused. Defendant approached Sergeant Barnes and appeared to be "[v]ery aggravated" and "ready for a confrontation," while cussing and telling Sergeant Barnes "to shoot him." When Deputy Adams arrived at the scene, Defendant was "walking toward[ ] Sergeant Barnes'[s] patrol vehicle." As Defendant continued to approach Sergeant Barnes and his patrol vehicle, Sergeant Barnes repeatedly told "him to stop, put his hands up, get on the ground."

Out of concern for his safety, Sergeant Barnes "created space" by backing away from Defendant. Defendant then got into Sergeant Barnes's patrol car, which contained a shotgun, an AR-15, and "multiple magazines full of ammunition." As Deputy Adams "tried to begin to give commands" to Defendant, Sergeant Barnes started shooting at Defendant in the patrol vehicle. Defendant was not shot and drove away in Sergeant Barnes's patrol vehicle, "accelerat[ing] at a high speed."

Deputy Adams immediately began following Defendant, who made a "U-turn" and drove "head on" toward Deputy Adams's vehicle. Although Deputy Adams tried to avoid a collision, Defendant "ended up hitting [the] back end of the vehicle on the

left side." Deputy Adams was injured in the collision.

After the collision, Deputy Adams exited his vehicle, drew his service weapon, and repeatedly ordered Defendant "to get down on the ground." Defendant got out of the vehicle but otherwise ignored the commands. He was "very angry, very upset, [and] very irate" and continued to approach Deputy Adams on foot, "getting closer and closer." Additional officers arrived and Defendant fled the scene. Officers detained Defendant after a short pursuit. Deputy Adams attempted to give chase but was unable to continue due to the injury to his head; the laceration was "bleeding heavily" and required "seven stitches."

Footage of the encounter with Defendant from Sergeant Barnes's and Deputy Adams's body-worn cameras and the dash cameras of their patrol vehicles was admitted at trial and published to the jury.

Sergeant Barnes testified that as a result of the collision, "[t]he whole front [of his patrol] vehicle was wrecked" and "it looked totaled." Deputy Adams's vehicle was "totaled" with a wheel "off" and "a lot of damage."

On 12 June 2024, the jury returned verdicts finding Defendant guilty of felony assault with a deadly weapon on a government official, resisting a public officer, misdemeanor fleeing to elude arrest with a motor vehicle, misdemeanor unauthorized use of a motor vehicle, and two counts of injury to personal property. The trial court entered judgments, consolidating Defendant's convictions for assault with a deadly weapon on a government official and resisting a public officer and sentencing him to

16 to 29 months' imprisonment in the custody of the North Carolina Department of Adult Correction. The court consolidated Defendant's remaining convictions and sentenced him to a consecutive term of 120 days' imprisonment.

Defendant filed timely notice of appeal.

## II.    Discussion

Defendant raises one argument on appeal: that "[t]rial counsel provided ineffective assistance by declining to request a necessity instruction for the assault with a deadly weapon on a government official and injury to personal property charges based on a misinterpretation of the applicable legal standard." We disagree.

"[W]e apply a two-part test to determine whether a defendant was denied effective assistance of counsel. First, the defendant must show his counsel's performance was deficient, such that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *State v. Lane*, 271 N.C. App. 307, 317, 844 S.E.2d 32, 41 (cleaned up), *disc. review denied*, 376 N.C. 540, 851 S.E.2d 624 (2020). "Second, the defendant must show counsel's alleged errors prejudiced him such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (cleaned up).

"Generally, a claim of ineffective assistance of counsel should be considered through a motion for appropriate relief before the trial court in post-conviction proceedings and not on direct appeal." *State v. Allen*, 262 N.C. App. 284, 285, 821

S.E.2d 860, 861 (2018). "In particular, where the alleged deficient performance concerns potential questions of trial strategy and counsel's impressions, an evidentiary hearing available through a motion for appropriate relief is the procedure to conclusively determine these issues." *State v. Plotz*, 295 N.C. App. 404, 422, 906 S.E.2d 57, 70 (2024) (cleaned up), *disc. review denied*, ___ N.C. ___, 916 S.E.2d 255 (2025).

Nevertheless, ineffective assistance of counsel claims "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). On direct appeal, this Court "ordinarily limits its review to material included in the record on appeal and the verbatim transcript of proceedings." *State v. Warren*, 244 N.C. App. 134, 144, 780 S.E.2d 835, 841 (2015) (citation omitted), *disc. review denied*, 368 N.C. 688, 781 S.E.2d 483 (2016).

## A. The Defense of Necessity

Defendant first argues that "[t]he evidence supported a necessity instruction for the assault with a deadly weapon on a government official and injury to personal property charges."

"A defendant must prove three elements to establish the defense of necessity: (1) reasonable action, (2) taken to protect life, limb, or health of a person, and (3) no

other acceptable choices available." *State v. Miller*, 258 N.C. App. 325, 328, 812 S.E.2d 692, 695 (2018) (citation omitted). Because the defense of necessity is "an affirmative defense, the burden rests upon the defendant to establish this defense, unless it arises out of the State's own evidence, to the satisfaction of the jury." *Id.* at 327, 812 S.E.2d at 694 (cleaned up).

"[I]f the evidence presented at trial, viewed in the light most favorable to [the d]efendant and ignoring all contradictory evidence, was sufficient to permit the jury to *reasonably infer* the existence of these three elements," then the trial court could have properly given an instruction on this defense. *Id.* at 328, 812 S.E.2d at 695. "It would then be the sole province of the jury to determine whether, based upon those facts, [the d]efendant had met his burden of proving necessity to the satisfaction of the jury." *Id.*

"[A]n individual is guilty of felony assault with a deadly weapon on a government official where the individual: (i) commits an assault; (ii) with a firearm or other deadly weapon; (iii) on a government official; (iv) who is performing a duty of the official's office." *State v. Smith*, 186 N.C. App. 57, 65, 650 S.E.2d 29, 35 (2007) (cleaned up) (citing N.C. Gen. Stat. § 14-34.2 (2023)). "An assault is an overt act or attempt, with force or violence, to do some immediate physical injury to the person of another, which is sufficient to put a person of reasonable firmness in fear of immediate physical injury." *State v. Bucklew*, 280 N.C. App. 494, 509, 867 S.E.2d 362, 375–76 (2021) (cleaned up), *disc. review denied*, 384 N.C. 26, 883 S.E.2d 615 (2023).

"A deadly weapon is any article, instrument or substance which is likely to produce death or great bodily harm." *Id.* at 509, 867 S.E.2d at 376 (emphasis omitted) (cleaned up). "In North Carolina, an automobile can be a deadly weapon if it is driven in a reckless or dangerous manner." *Id.* (cleaned up).

"An individual is guilty of injury to personal property in the event that: (1) personal property was injured; (2) the personal property was that of another; (3) the injury was inflicted wantonly and willfully; and (4) the injury was inflicted by the person or persons accused." *State v. Ellis*, 368 N.C. 342, 344, 776 S.E.2d 675, 677 (2015) (cleaned up) (citing N.C. Gen. Stat. § 14-160).

On appeal, Defendant argues that "[t]he evidence established all three elements of the defense of necessity" and "supported a necessity instruction for the assault with a deadly weapon on a government official and injury to personal property charges." To support this contention, Defendant highlights the following portions of his testimony:

> From the moment of the first shot that I heard, shots kept coming at me. I mean there was shots before I got fully in the [patrol] car, shots before I go[t] the door shut. After the door, they still shooting. So I remember thinking, you know, is this really happening. Did he really just try to kill me? I think at one point I even voiced it, but I ended up driving off because frankly I can't get back out of the [patrol] car at this point because I'm going to get shot and killed. So my only safe option is to leave because a bullet starts to come through the glass.
>
> . . . .

> Because I wasn't ever trying to flee I was simply trying to protect my life. And at this point, they tried to kill me. So I'm trying to figure out how to surrender safely without dying at this point.

However, this testimony referred to Defendant's decision to steal Sergeant Barnes's patrol vehicle rather than the basis of his convictions for assault with a deadly weapon on a government official and injury to personal property—his collision with Deputy Adams, which resulted in a serious injury to Deputy Adams and severe damage to both patrol vehicles. Moreover, the evidence presented at trial amply supported trial counsel's decision not to request a jury instruction on the defense of necessity as to the charges of assault with a deadly weapon on a government official and injury to personal property. Defendant's decision to turn around and drive head on toward Deputy Adams's patrol vehicle—rather than away from the purported danger—neither constituted "reasonable action" that was "taken to protect life, limb, or health of a person" nor demonstrated that there were "no other acceptable choices available." *Miller*, 258 N.C. App. at 328, 812 S.E.2d at 695 (citation omitted).

## B. Misinterpretation of Law

Defendant further contends that his "[t]rial counsel declined to pursue a necessity instruction for the assault charge on the ground that [Defendant] did not inten[d] to strike Deputy Adams" and that the same misapprehension of the law motivated counsel's "failure to ask for a necessity instruction for the injury to personal property charges." Yet, Defendant's argument focuses on what he does not

have to prove—specific intent—and neglects to establish, or even address, the three required elements of the defense of necessity: "(1) reasonable action, (2) taken to protect life, limb, or health of a person, and (3) no other acceptable choices available." *Id.* (citation omitted).

Defendant may not avail himself of the defense of necessity where he "has presented no such evidence on the lack of acceptable alternatives or the reasonableness of his actions." *State v. Templeton*, 293 N.C. App. 161, 165, 899 S.E.2d 588, 591 (2024). Accordingly, because Defendant was not entitled to have the jury instructed on the defense of necessity as to the assault with a deadly weapon on a government official and damage to personal property charges, counsel's failure to request such instruction was not error. Thus, Defendant did not receive ineffective assistance of counsel.

## III.  Conclusion

For the foregoing reasons, we conclude that Defendant has not shown that he received the ineffective assistance of counsel.

NO ERROR.

Judges COLLINS and CARPENTER concur.

Report per Rule 30(e).